**CHIMICLES SCHWARTZ KRINER &
  DONALDSON-SMITH LLP**
Beena M. McDonald (CA Bar ID 365776)
*bmm@chimicles.com*
Kimberly Donaldson-Smith *(pro hac vice
forthcoming)*
*kmds@chimicles.com*
361 West Lancaster Avenue
Haverford, PA 19041
P: (610) 642-8500
F: (610) 649-3633

***Attorneys for Plaintiffs and the Class***

*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Eugene Cobb, Senad Djulamerovic, Peter Hunt, Adnan Merdach, and Steven Poslof, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ALIBABA GROUP HOLDING LIMITED, ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED, ALIBABA GROUP (US) INC., ALIBABA.COM US LLC, ALIBABA.COM US E-COMMERCE CORP., and CAINIAO SMART LOGISTICS NETWORK LIMITED,**<br><br>**Defendants.** | **Case No.**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.;**<br>2. **Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;**<br>3. **Violation of New York's General Business Law § 349, et seq.;**<br>4. **Violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.;**<br>5. **Violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, et seq.;**<br>6. **Violation of Virginia's Consumer Protection Act, VA. Code § 59.1-196 et seq.; and**<br>7. **Unjust Enrichment**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

**CLASS ACTION COMPLAINT**

COME NOW Plaintiffs Eugene Cobb, Senad Djulamerovic, Peter Hunt, Adnan Merdach, and Steven Poslof (collectively "Plaintiffs"), individually and on behalf of the other members of the Nationwide Class ("the Class") defined below, bring this Class Action Complaint ("the Complaint") against Defendants Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Private Limited, Alibaba Group (US) Inc., Alibaba.com US LLC, Alibaba.com US E-Commerce Corp., and Cainiao Smart Logistics Network Limited (collectively "Alibaba", "Alibaba Defendants", or "Defendants"). Plaintiffs make these allegations upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief. In support thereof, Plaintiffs state and allege as follows:

**NATURE OF THE ACTION**

1.    Alibaba.com – "often called The Amazon of China"[1] – is a global e-commerce marketplace and platform where third party merchants sell their products to buyers in the United States and around the world. Alibaba.com (and its affiliated sites) is owned and operated by Alibaba Group Holding Ltd. ("Alibaba Group"). In September 2014, Alibaba Group went public with a record-breaking $21.8 billion initial public offering (IPO) – then the largest in IPO history – trading on the New York Stock Exchange under the symbol "BABA."[2]

2.    As of February 2026, Alibaba Group is the second-largest e-commerce business on the planet, behind only Amazon.[3] The Defendant entities in this action are subsidiaries of Alibaba

---

[1] https://www.investopedia.com/insights/10-companies-owned-alibaba/ (last accessed 5/6/2026).
[2] https://www.investopedia.com/articles/investing/112614/alibaba-ipo-why-list-us.asp (last accessed 5/6/2026).
[3] https://www.statista.com/statistics/245340/leading-large-cap-e-commerce-companies-market-

Group that collectively do business in the United States under the "Alibaba" name. The enterprise is a massive operation: Alibaba Group reported revenues of $136.26 billion in 2024 and $142.67 billion in 2025, with quarterly revenues continuing to climb.[4,5]

3. To distinguish itself from those competitors and attract buyers to its platform, Alibaba.com established and touted so-called "buyer protection services", that would, Alibaba claimed, mitigate risks associated with the global trade occurring on Alibaba.com. These services, identified by Alibaba as "Alibaba Trade Assurance" and "Alibaba Guaranteed", are prominently advertised to buyers and referenced consistently and frequently on Alibaba.com. Alibaba has stated and represented to buyers shopping Alibaba.com that "Alibaba.com protects all your orders placed and paid on the platform with " Trade Assurance" and affords protections under "

Alibaba Guaranteed " (which includes a "Money-back guarantee").

4. This action challenges the fundamentally illusory nature of Alibaba's Trade Assurance Policy and Alibaba Guaranteed. As will be detailed herein, Alibaba represents that these assurances and guarantees provide meaningful contractual protections and recourse for buyers in connection with their purchases from third-party sellers. Such protections expressly include refunds and compensation for various order issues.

5. In fact, the coverage provided to buyers by the Trade Assurance Policy and Alibaba Guaranteed is wholly illusory; the actual provision of its remedies is not the result of a ministerial,

---

cap/#:~:text=With%20a%20market%20cap%20of,over%20300%20billion%20U.S.%20dollars (last accessed 5/6/2026).
[4] https://companiesmarketcap.com/alibaba/revenue/ (last accessed 5/6/2026).
[5] https://www.alizila.com/alibaba-core-businesses-growth-share-repurchase-june-first-quarter-2025-fiscal-year/ (last accessed 5/6/2026).

formulaic process that provides any sort of actual guarantee for buyers, but instead reflects policies that are capriciously applied, or not, in a manner that remains wholly within Alibaba's unfettered discretion.

6.      As a component of Alibaba's messaging to buyers, performance by Alibaba under the Trade Assurance Policy and Alibaba Guaranteed is presented to buyers as a matter of contractual obligation. As applied, however, it is instead conditioned upon facts and events wholly under Alibaba's control, and the determination of whether to provide relief is left entirely to its own will and whim.

7.      The experiences of the Plaintiffs and the Class, where undisputed evidence of covered issues were met with denial of refunds or meaningful compensation, are symptomatic of these illusory guarantees and promises. Accordingly, the contractual protection offered by Alibaba as part of its marketing messaging to buyers is instead wholly illusory.

8.      Alibaba expressly and pervasively represents to buyers that the Trade Assurance Policy and Alibaba Guaranteed will protect buyers by providing refunds and compensation for issues related to delivery (e.g., not shipped, missing, etc.), product quality (e.g., defective, incorrect, damaged, etc.), and other agreed-upon terms related to the purchase of products on Alibaba.com.  However, these representations create the false and misleading impression of a binding commitment, when in practice, the decision to provide such refunds and compensation is reserved to Alibaba's sole and arbitrary discretion, rendering the purported protections and guarantees illusory.

9.      Plaintiffs and the Class have uniformly ordered products on Alibaba.com, that triggered the application of Alibaba's Trade Assurance Policy and the Alibaba Guarantee. Yet,

4
CLASS ACTION COMPLAINT

Alibaba has failed to provide refunds and compensation for issues explicitly covered by the terms of, at minimum, the Alibaba Trade Assurance Policy.

10.    Alibaba's failure to provide refunds and compensation is not merely a series of isolated breaches, but rather a manifestation of the illusory nature of the Trade Assurance Policy and Alibaba Guaranteed. In direct conflict with and irrespective of the representations Alibaba.com prominently advertises about the guarantees and protections buyers get under Trade Assurance and Alibaba Guaranteed, Alibaba exerts ultimate control over whether to honor a claim, irrespective of the merits or the evidence presented by the buyer, thereby making its promise of assurance dependent entirely on its own will.

11.    Plaintiffs and Class Members have suffered damages as a result of Alibaba's misrepresentations, omissions, and breaches.

12.    Plaintiffs and Class Members would not have used Alibaba.com as an e-commerce platform and purchased products on Alibaba.com if they had known that Alibaba would fail to provide refunds and compensation under the terms of its Trade Assurance Policy and Alibaba Guaranteed.

## PARTIES

**Plaintiffs**

13.    **Plaintiff Eugene Cobb** ("Cobb") is a resident of Johnstown, Ohio.

14.    **Plaintiff Senad Djulamerovic** ("Djulamerovic") is a resident of Westhampton Beach, New York.

15.    **Plaintiff Peter Hunt** ("Hunt") is a resident of Casa Grande, Arizona.

16.    **Plaintiff Adnan Merdach** ("Merdach") is a resident of Chesterfield, Virginia.

17.    **Plaintiff Steven Poslof** ("Poslof") is a resident of Susanville, California.

18.    As detailed below, each Plaintiff made a purchase on Alibaba.com and subsequently attempted to make a claim pursuant to its Trade Assurance Policy, but were denied relief.

**Defendants**

19.    **Defendant Alibaba Group Holding Limited** ("Alibaba Group") is a company organized and existing under the laws of the Cayman Islands, with its principal executive offices in Hangzhou, the People's Republic of China. Alibaba Group is the ultimate corporate parent of each of the other Defendants and is the entity whose American Depositary Shares trade on the New York Stock Exchange under the symbol "BABA." As alleged above, Alibaba.com and its affiliated sites are owned and operated by Alibaba Group.

20.    Alibaba Group is directly responsible for the representations at issue in this action. Alibaba Group authored and disseminated the foundational Trade Assurance representations on which buyers rely, including its July 22, 2015 press release announcing the "full set of protections" afforded buyers under the Trade Assurance program. In its annual reports filed with the United States Securities and Exchange Commission, Alibaba Group describes the marketplaces—including Alibaba.com—and the Trade Assurance and Alibaba Guaranteed programs as components of its own integrated "ecosystem," and uses the terms "our" and "our company" to refer to Alibaba Group together with its subsidiaries and variable interest entities. Alibaba Group directs the efforts of the enterprise toward its stated mission and exercises control over how the Alibaba.com platform, the Trade Assurance program, and the Alibaba Guaranteed program are marketed, operated, and administered, including as to United States buyers such as Plaintiffs and

the Class.

21.     This Court has personal jurisdiction over Alibaba Group because Alibaba Group purposefully directed its Trade Assurance and Alibaba Guaranteed representations at the United States, including California, through its press releases, its public-facing website and advertising, and its ownership and operation of the Alibaba.com platform, which Alibaba Group markets to and operates for United States buyers and on which it accepts payments from those buyers. Plaintiffs' claims arise out of and relate to that forum-directed conduct. Alibaba Group has thereby purposefully availed itself of the privilege of conducting activities within the forum, and the exercise of jurisdiction over Alibaba Group is reasonable.

22.     In the alternative, and upon information and belief, this Court has personal jurisdiction over Alibaba Group because the Alibaba Defendants operate as a single, integrated enterprise and as the agents and alter egos of one another. There exists such a unity of interest and ownership among the Alibaba Defendants that the separate corporate personalities of the entities do not in reality exist, and Alibaba Group dominates and controls the United States-facing Alibaba Defendants with respect to the conduct alleged herein. Adherence to the fiction of separate corporate existence would sanction fraud or promote injustice. Accordingly, the United States and California contacts of the other Alibaba Defendants are properly imputed to Alibaba Group for purposes of personal jurisdiction.

23.     **Defendant Alibaba.com Singapore E-Commerce Private Limited** ("Alibaba Singapore") is a private company incorporated in Singapore. Alibaba Singapore maintains its registered office at 51 Bras Basah Road, #01-21, Lazada One, Singapore 189554. Alibaba Singapore is a subsidiary of Alibaba Group Holding Limited.

24. Alibaba Singapore is the contracting party for all users of the Alibaba.com platform located outside of mainland China, Hong Kong, and Macau. Alibaba Singapore operates and administers the Alibaba.com marketplace for international users, including United States buyers.

25. Alibaba Singapore controls and administers the Trade Assurance program through the Transaction Services Agreement and the Alibaba Guaranteed program. In that capacity, Alibaba Singapore sets the program's terms, receives and adjudicates buyer complaints, and determines refund eligibility. Upon information and belief, Trade Assurance escrow payments flow through designated escrow accounts that are controlled by Alibaba Singapore, and refunds under the Trade Assurance program are processed by Alibaba Singapore.

26. Alibaba Singapore processes payments initiated by United States buyers and actively targets them with tailored content, pricing, and promotions. Far from a peripheral feature, the Trade Assurance program is marketed to United States buyers as a cornerstone of the Alibaba.com experience, and it is the program's representations — and the assurances it conveys — that United States buyers rely on when deciding to make purchases through the platform.

27. **Defendant Alibaba Group (US) Inc.** ("Alibaba US Group") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 525 Almanor Avenue, Suite 400, Sunnyvale, California 94085. Alibaba US Group maintains offices and employees in California and functions as the principal U.S.-domiciled vehicle through which the Alibaba enterprise conducts its U.S.-facing operations, manages its domestic workforce, and directs its American strategic interests. Alibaba US Group provides operational and strategic support for Alibaba's United States-facing activities, including activities conducted through the Alibaba.com platform for US-based users.

CLASS ACTION COMPLAINT

28.    Alibaba US Group employs personnel across a range of functions that directly support the Alibaba.com platform as it is accessed and used by United States buyers and sellers, including business development, marketing and advertising, government and regulatory affairs, legal and compliance, technology and cloud infrastructure, and executive leadership. Alibaba US Group maintains leadership positions within Alibaba's North America organizational structure.

29.    Alibaba US Group's employees have participated in the development, promotion, implementation, and marketing of the Trade Assurance and Alibaba Guaranteed programs to United States buyers and businesses. Upon information and belief, strategic decisions made by Alibaba US Group personnel regarding how the Alibaba.com platform is marketed, operated, and administered within the United States—including decisions regarding Trade Assurance and Alibaba Guaranteed coverage representations—are among those that resulted in the conduct giving rise to this action.

30.    **Defendant Alibaba.com US LLC** ("Alibaba US LLC") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 525 Almanor Avenue, Suite 400, Sunnyvale, California 94085. Alibaba US LLC is involved in marketing, brand promotion, and technology support for the  Alibaba.com platform as it is accessed and used by United States users such as Plaintiffs and the Class.

31.    **Defendant Alibaba.com US E-Commerce Corp**. ("Alibaba US E-Commerce") is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of California. Alibaba US E-Commerce is a subsidiary within the Alibaba Group corporate structure that is focused on e-commerce activities directed at the United States market,

9
CLASS ACTION COMPLAINT

including support for United States transactions conducted through the Alibaba.com marketplace such as those made by Plaintiffs and the Class.

32.    **Defendant Cainiao Smart Logistics Network Limited** ("Cainiao") is a company organized under the laws of the Cayman Islands, with its principal operations headquartered in Hangzhou, Zhejiang Province, China. Alibaba Group Holding Limited owns approximately 64% of Cainiao's equity and announced in March 2024 its intention to acquire the remaining outstanding shares.

33.    Cainiao operates the logistics and shipping infrastructure used to fulfill deliveries of goods purchased by United States buyers through the Alibaba.com platform. Cainiao maintains over 1,100 warehouses globally, operates sorting centers in overseas markets, runs approximately 170 chartered flights and block space agreements per week, and manages a cross-border logistics network covering more than 200 countries and regions, including the United States. Cainiao provides customs clearance services for shipments entering the United States through collaborations with service providers at more than 100 ports worldwide.

34.    Upon information and belief, when United States buyers file Trade Assurance claims based on non-delivery, late delivery, or shipment discrepancies, the logistics data and shipping records used to evaluate those claims are generated, maintained, and controlled by Cainiao. Cainiao's own conduct—operating the delivery network, generating the shipment data, and providing the logistics infrastructure upon which Trade Assurance representations depend— is directly connected to the injuries alleged by Plaintiffs and members of the Class.

35.    Upon information and belief, each of the Alibaba Defendants is a subsidiary of or is primarily owned by ultimate corporate parent Alibaba Group Holding Limited, which is

10
CLASS ACTION COMPLAINT

organized and exists under the laws of the Cayman Islands, with principal offices in the People's Republic of China.[6] Alibaba Group's global offices include the United States, which it identifies as a "[k]ey international location[]".[7]

36.　　Each of the Alibaba Defendants are for profit entities. On information and belief, at all times material hereto, the Alibaba Defendants collectively owned, controlled and/or facilitated the operation of the websites at the URL: www.alibaba.com (the "Alibaba Website") which is accessible throughout the United States and in this judicial district.

37.　　On information and belief, at all times material hereto, Defendants conduct significant business in all states through Alibaba.com, and have United States offices in, at least, Sunnyvale, California, Pasadena, California, and New York, New York.[8, 9, 10]

38.　　On information and belief, at all times mentioned herein, each Defendant was the agent, servant, representative, employee, partner, and/or controlling person of the other Defendants named herein, and in doing the acts herein alleged was acting as an agent for the others.

## JURISDICTION AND VENUE

39.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is of diverse citizenship from any Defendant, there are more than 100

---

[6] *See e.g.,* Alibaba Group Holding Limited Form 20-F for fiscal year ending March 31, 2025 ("Form 20-F"), pp. 1-4, F-15, filed with the U.S. Securities and Exchange Commission on June 26, 2025. *see also BWB Co., Ltd. v. Alibaba Group Holding Ltd., et. al.*, Case No. 3:23-cv-05917 (N.D. Cal. Jan 26, 2024), ECF No. 24, Defendants' Rule 7.1 Corporate Disclosure Statement, p. 2.

[7] *See* https://seller.alibaba.com/businessblogs/what-is-alibaba-everything-you-should-know-px002ar9z#:~:text=Unconventional%20Profit%20Model:%20Unlike%20traditional,enriches%20the%20overall%20user%20experience (last accessed 4/2/2026).

[8] https://seller.alibaba.com/us (last accessed 5/7/2026).

[9] https://campus-talent.alibaba.com/campus/en/index (last accessed 5/7/2026).

[10] https://us.alibaba.com/partners/new-york-pavilion (last accessed 5/7/2026).

Class Members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

40.    This Court has personal jurisdiction over Defendants because certain Defendants' principal place of business, including maintaining offices and data centers, for the U.S. marketplace is in this District, specifically in Sunnyvale, California (Santa Clara County), and, as detailed in the preceding section, because all Defendants have engaged in conduct that has impacted buyers in this District. As to each Defendant organized outside the United States, including Alibaba Group Holding Limited, Alibaba.com Singapore E-Commerce Private Limited, and Cainiao Smart Logistics Network Limited, this Court has specific personal jurisdiction because those Defendants purposefully directed their Trade Assurance and Alibaba Guaranteed representations, payment processing, and platform operations at buyers in this State and District, Plaintiffs' claims arise out of and relate to that forum-directed conduct, and the exercise of jurisdiction is reasonable. In the alternative, and upon information and belief, the Alibaba Defendants operate as a single, integrated enterprise and as agents and alter egos of one another, such that the forum contacts of the United States-based Defendants are properly imputed to the foreign Defendants.

41.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District and Defendants transact business within this District and Defendants are subject to this Court's personal jurisdiction in this District.

## COMMON FACTUAL ALLEGATIONS

### The Alibaba Empire

42.    Alibaba Group "has two core businesses – e-commerce and 'AI+Cloud'"[11] and is divided into 6 main business segments.



43.    Alibaba Group's main commerce segments are the Alibaba China E-Commerce Group (serving the China-based market) and the Alibaba International Digital Commerce Group ("AIDC") (serving international markets).[13] These segments operate several highly popular online marketplaces where independent third-party merchants sell products to buyers. Along AIDC's platforms, AliExpress and Alibaba.com are primary marketplaces through which international buyers source and purchase products:[14]

---

[11] *Id*. at ii.
[12] https://www.alibabagroup.com/en-US/about-alibaba-businesses (last accessed 5/7/2026).
[13] *Id*.
[14] *Id*.

13
CLASS ACTION COMPLAINT

44.    Alibaba Group directs the efforts of Alibaba towards its stated mission "[t]o make it easy to do business anywhere"[15] "across our diverse ecosystem".[16]

45.    Alibaba's "Monetization Model" states that "[o]ur marketplace, cloud and other businesses are highly synergistic, which create an ecosystem that enables buyers, consumers, merchants, brands, retailers, enterprises, third-party service providers, strategic alliance partners and other businesses to interconnect and interact with each other."[17]

46.    Alibaba Group, in its Form 20-F submitted to the Securities and Exchange Commission, uses the term "our" and "our company" to refer to "Alibaba Group Holding Limited" and its "subsidiaries and [variable interest entities] VIEs that together are representative of the major businesses operated by our group, including significant subsidiaries."[18]

47.    Employees of the various Alibaba Defendants provide services across corporate

---

[15] https://www.alibabagroup.com/en-US/about-alibaba#culture-and-values (last accessed 5/7/2026).
[16] Form 20-F, p. ii.
[17] Alibaba Group Holding Limited 2025 Hong Kong Annual Report, p. 58 ("HKAR") (incorporated by reference into the Form 20-F) https://www.hkexnews.hk/listedco/listconews/sehk/2025/0626/2025062601064.pdf (last accessed 5/7/2026) .
[18] Form 20-F, p. 2.

14
CLASS ACTION COMPLAINT

lines to other Alibaba Defendants. For example, Alibaba US Group helps build awareness in the United States for the Alibaba brand name and Alibaba's platforms, and acts as an agent for the other Alibaba Defendants by providing marketing and other brand promotion services in the United States for the Alibaba Defendants.

**Alibaba.com Actively Courts, Serves, and Profits from Business and Consumer Buyers – its B2B Characterizations Otherwise are Wholly Untrue**

48.     Any attempted characterization of Alibaba.com as purely a "business-to-business" ("B2B") or "wholesale" platform, which characterization does not insulate Defendants from liability under consumer protection laws, is contradicted by Defendants' own conduct. Alibaba.com knowingly permits, invites, and facilitates purchases by individual consumers, imposes no meaningful restrictions preventing consumers from purchasing on the platform, processes payments directly from those consumers, and markets consumer-oriented protections—including "money-back guarantees," "refunds," and "protection at every stage of the purchase"—to induce those transactions. Defendants pocket the profits, control the payment and dispute-resolution process, and adjudicate claims arising from consumer transactions, all while taking no steps to prevent or limit consumer use of the platform. The label Defendants affix to Alibaba.com is irrelevant; what matters is how the platform actually operates — and in practice, Alibaba.com functions as a marketplace for both consumers and businesses. Defendants cannot hide behind a purported wholesale or B2B label – where Defendants hold the platform out to consumers, accept their payments, and market and administer consumer-facing guarantees in connection with those transactions, Defendants are subject to the consumer protection obligations applicable to such conduct.

49.     Alibaba's own Trade Assurance Policy[19] – which covers refunds in case of Seller breach (further detailed below) – confirms the point. Nowhere in this policy does Alibaba state that purchases by individual consumers are not covered, void or unauthorized by the Trade Assurance program. To the contrary, it defines a "Buyer" under the policy as "a **user** of Alibaba.com who has purchased products and requested a Seller to provide Trade Assurance Services."[20] (emphasis added).

50.     That silence is no accident — it is entirely consistent with how the platform actually operates since: Alibaba processes consumer payment methods; Alibaba markets consumer-style guarantees; and Alibaba adjudicates disputes brought by individual buyers. None of that is consistent with a platform that genuinely restricts users and transactions to B2B commerce.

51.     The account registration process confirms this further. When a user creates an Alibaba.com account, the only choice presented is whether the user is a "Buyer" or a "Supplier" — there is no requirement, disclosure, or even suggestion that buyers must be businesses:

---

[19]https://rulechannel.alibaba.com/icbu?spm=a2700.product_home_fy25.0.0.2ce267af3SY2Rs&type=detail&ruleId=21001742&cId=1304#/rule/detail?ruleId=21001742&cId=1304 (last accessed 5/8/2026)
[20] *Id.*

CLASS ACTION COMPLAINT

**Alibaba's Trade Assurance Policy and Alibaba Guaranteed**

52.    Alibaba represents that its Trade Assurance Policy and Alibaba Guaranteed will protect buyers who purchase products on Alibaba.com.

53.    Alibaba represents on its website that it "serve[s] millions of buyers and suppliers around the world."[21]

54.    Alibaba has expressly acknowledged the "risks" associated with cross-border trade, including delivery issues and product quality.[22] To purportedly address those risks, so that U.S.-based buyers are encouraged to use and place orders on Alibaba.com, Alibaba launched its Trade Assurance program in approximately 2015. As reported by China Daily.com, the launch had its

---

[21] https://activities.alibaba.com/alibaba/following-about-alibaba.php?spm=a2700.product_home_l3.0.0.2ce267afrj1aEx (last accessed 5/8/2026)
[22] https://www.youtube.com/watch?v=2N6fCja22g4&t=2s (last accessed 5/12/2026)

intended impact, "Trade booms on Alibaba's assurance".[23]

55.    Alibaba's press releases about Trade Assurance are unequivocal in the protections afforded to buyers on Alibaba.com.  For example, Alibaba Group's July 22, 2015 press release states the following about its "Full Set of Protection" with the "Trade Assurance Program":[24]

*Trade Assurance provides a full set of protections for buyers in global trading Alibaba.com will refund the buyer for the supplier if the supplier does not meet the shipping time or the quality of products fails to meet contract requirements.*

56.    In addition, in 2024, Alibaba.com officially launched "Alibaba Guaranteed", purportedly to further engender "confidence" in buyers to use Alibaba.com, and through which buyers would get: "guarantee[d] delivery by the expected date"; and, "quick money back for order issues", among other promises.[25]

57.    Alibaba.com displays prominently both "Trade Assurance" and "Alibaba Guaranteed" on pages used by buyers to search for and place orders on Alibaba.com. For example, the following appears on Alibaba.com:

---

[23] https://usa.chinadaily.com.cn/epaper/2016-04/14/content_24539985.htm (last accessed 5/8/2026)
[24] https://www.alibabagroup.com/en-US/document-1491225726991466496 (last visited 5/6/2026)
[25] https://www.prnewswire.com/news-releases/alibabacom-officially-launches-alibaba-guaranteed-making-global-sourcing-as-simple-as-online-shopping-302165822.html (last accessed 5/9/2026)

18
CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT





**Alibaba.com order protection**  >

**Guaranteed delivery**

Better planning and managing inventory knowing that your order will be dispatched or delivered by the guaranteed date.

In the rare case there is a delay, receive a 10% compensation on the total order amount.

Learn about guaranteed shipping

**Easy Return**

For eligible products, enjoy free returns to a local warehouse near you and guaranteed refunds with support from Alibaba.com if products arrive defective or not as described.

Learn about refunds and returns

**Money-back protection**

Claim a refund if your order doesn't ship, is missing, or the products arrive defective, incorrect, or damaged.

Learn about refunds and returns

**24/7 support**

Access our virtual help center 24/7, or connect with live agents for order issues, reports, or inquiries.

58.    Alibaba further prominently represents on its website that its "Trade Assurance covers every stage of your purchasing journey" providing "buyers on Alibaba.com with secure ways to pay, protect against unforeseen circumstances such as product or shipping issues, and mediate between buyers and suppliers to resolve any issues related to the purchase":[26]

**Trade Assurance covers every stage of your purchasing journey**

We provide buyers on Alibaba.com with secure ways to pay, protect against unforeseen circumstances such as product or shipping issues, and mediate between buyers and suppliers to resolve any issues related to the purchase.

**Watch to learn more**

59.    Alibaba represents that its "Money-back policy" allows buyers to "[c]laim a refund to get your money back if your order has not been shipped, goes missing, or arrives with defects, incorrect items, damages, or other product-related issues":[27]

**Money-back policy**

Claim a refund to get your money back if your order has not been shipped, goes missing, or arrives with defects, incorrect items, damages, or other product-related issues.

If you are in an eligible country*, you can also take advantage of our Easy Return service to return defective products locally for free.

---

[26]https://tradeassurance.alibaba.com/?spm=a2700.product_home_l0.home_header.145.2ce267af8r0uYX&tracelog=PC_header_landingpage ("Trade Assurance Page") (last accessed 5/8/2026).
[27] *Id.*

60.    On the Trade Assurance Money-back policy web page, the "Refund policy" provides that buyers can "[c]laim refunds if orders haven't been shipped, are missing, or arrive with product issues (e.g., defective, incorrect, damaged, etc.)" and "Resolution Support" that provides "[i]f there's a problem with your refund, we will help mediate to get your money back":[28]



61.    At the bottom of this web page, there is a link to a PDF titled Trade Assurance guide.[29] The Trade Assurance guide provides that "Trade Assurance is a set of protection services that covers every stage of your purchasing journey when you order and pay on Alibaba.com – **all at no cost**" and will "**protect you against unforeseen circumstances such as product quality issues, shipping delays, and more**" (emphasis added):[30]

---

[28] https://tradeassurance.alibaba.com/ta/MoneyBackPolicy.htm#icbu-the-new-header-container
[29] https://sc01.alicdn.com/kf/Hecf5553758054f109987e4261e84eb57z.pdf?spm=a2756.trade-assurance-lp.0.0.700047d8dJT5R5&file=Hecf5553758054f109987e4261e84eb57z.pdf ("Trade Assurance Guide") (last accessed on 5/8/2026).
[30] *Id.* at p. 3. In addition to the Trade Assurance Money-back policy and Standard Refund policy, buyers and suppliers may negotiate a separate agreement through Trade Assurance Services where Alibaba.com holds in escrow the buyer's funds which purportedly are released to the supplier after the product is received and confirmed. None of the Plaintiffs nor the purported Class engaged in this type of agreement with the suppliers, but rather made purchases under the protections offered by the Trade Assurance Money-back policy and Standard Refund policy.

## What is Trade Assurance

Trade Assurance is a set of protection services that covers every stage of your purchasing journey when you order and pay on Alibaba.com - all at no cost. We offer secure and easy ways to pay, and protect you against unforeseen circumstances such as product quality issues, shipping delays, and more. In the unlikely event an issue arises during the purchase, we will mediate between you and the supplier to reach a resolution.

62.    Along with its website, Alibaba.com, and the digital materials available on the website, Alibaba floods the internet with pop up ads that promote its Trade Assurance Policy:



63.    In summary, Alibaba widely publicizes its Trade Assurance Policy and explicitly represents in plain terms that its Trade Assurance Policy will provide refunds and compensation to buyers for delivery and product issues (e.g., delivery times, lack of delivery, defective, damaged, incorrect, etc.) related to the purchase of the products on Alibaba.com, such that users can make purchases with confidence. It is presented as a contractual guarantee that accompanies a purchase on the Alibaba.com platform.

64.    Likewise, Alibaba.com expressly advertises and promotes, the Alibaba Guarantee as providing "an extra layer of confidence, with every delivery and after-sales guaranteed by Alibaba.com" providing for: (a) "Guaranteed fixed prices"; (b) "Guaranteed on-time delivery"; and (c) "Guaranteed money back":

CLASS ACTION COMPLAINT



**Alibaba Guaranteed**                                            ✕

Source with an extra layer of confidence, with delivery and after-sales guaranteed by Alibaba.com

**Guaranteed fixed prices with shipping included**
Know the total price and cost per piece with the shipping included before placing an order

**Guaranteed on-time delivery by scheduled dates**
Expect delivery by the guaranteed date via Alibaba.com Logistics or receive 10% delay compensation (up to US $100)

**Guaranteed money back for order issues**
Get your money back for missing deliveries, damaged products, and quality defects including design, material, manufacturing, or other issues

65.     Alibaba Guaranteed provides for "no worries about shipment delays. Your order is guaranteed to be delivered by the scheduled date with Alibaba.com logistics. If delayed you will receive 10% compensation. No hassles with returns and refunds. Enjoy peace of mind with free returns to a local warehouse for defective products. Plus Alibaba.com will handle communication with the suppliers to ensure you get your money back for losses and damages."



CLASS ACTION COMPLAINT



No worries about shipment delays.



to ensure you get $ back for

66.    These order protections appearing on Alibaba.com purchase pages further ensure: (a) "Secure Payments"; (b) "Guaranteed Delivery"; (c) "Money-back Guarantee"; (d) "24/7 support"; and (e) "Data Privacy":

**Alibaba.com order protection** ✕

☑ **Secure payments**

Choose your preferred local payment methods, currencies, bank transfers, or deferred payment plans to pay.

Every transaction you make through Alibaba.com is protected by SSL encryption and PCI DSS data security protocols.

VISA ● ● ● ⚡ PayPal ⊄Pay Klarna ⓢ Afterpay ⓟ Pay Later GPay ● ①
⬛ ● T/T

Learn about secure payments

🚛 **Guaranteed delivery**

Better planning and managing inventory knowing that your order will be dispatched or delivered by the guaranteed date.

In the rare case there is a delay, receive a 10% compensation on the total order amount.

Receive up to a full refund if products are lost or damaged during delivery. Alibaba.com handles the communication with the logistics provider on your behalf.

Learn about guaranteed shipping

25
CLASS ACTION COMPLAINT

**Money-back guarantee**

Enjoy free returns to a local warehouse near you and guaranteed refunds with support from Alibaba.com if products arrive defective, incorrect, or damaged.

If your order hasn't been shipped or is missing, you can also claim a refund.

Learn about refunds and returns

**24/7 support**

Access our virtual help center 24/7, or connect with live agents for order issues, reports, or inquiries.

Learn about 24/7 support

**Data privacy**

We never share your data with third parties without your consent. All personal information is handled in accordance with the Alibaba.com Privacy Policy.

Learn how we protect your data

67.    Specifically, as to the "Money-back Guarantee" Protection, that is part of "Alibaba Guaranteed", Alibaba.com offers and represents to a buyer (prior to a buyer placing the order) three guarantees assuring the buyer that she or he can "**Get your money back for missing deliveries and defective or damages products with quick resolution support from us**".  The 3 enumerated ways are: (i) "Easy Return & Refund", (ii) "Free cancellation" and, (iii) "Money-back Protection", as depicted here:

CLASS ACTION COMPLAINT

**Money-back guarantee**

Get your money back for missing deliveries and defective or damaged products with quick resolution support from us.

Plus, some products come with the added benefit of free returns to a local warehouse near you if they're defective.

**Easy Return & Refund**

If you encounter product quality issues with your order, such as defects or items not as described, get dedicated support from Alibaba.com.

- Get a refund when you make a free return to a local warehouse near you.
- For special cases like large orders, our support team will contact you directly with the next steps, such as providing further evidence.

Apply up to 60 days after delivery.

**Free cancellation**

If you change your mind, you can cancel your order before the supplier ships it and receive a full refund instantly with no additional cancellation fee.

**Money-back protection**

If your order doesn't ship, is missing, or has other issues, you may be eligible for up to a full refund. If you encounter a problem with the refund, we'll work with you and the supplier to help get it resolved.

Apply anytime before shipment or up to 60 days after delivery.

68.     According to Alibaba.com, a buyer can apply for an "**Easy Return & Refund**" "[i]f you encounter product quality issues with your order, such as defects or items not described."

69.     Second, according to Alibaba.com, a buyer can apply for "**Free Cancellation**" "[i]f you change your mind, you can cancel your order before the supplier ships it and receive a full refund instantly with no additional cancellation fee."

70.     Third, according to Alibaba.com, a buyer can apply for a "**Money-back Protection**" "If your order doesn't ship, is missing, or has other issues…".

71.     In summary, notwithstanding that Alibaba, throughout the buyer's interactions with Alibaba.com, widely advertises numerous, material buyer protections, under both the "Trade Assurance" and "Alibaba Guaranteed" marketing labels, the reality, however, is far different.

72.    While Alibaba's promotional materials and website highlight buyer protections such as 'money-back,' 'refunds,' and 'compensation for any issues related to the purchase,' these materials intentionally fail to disclose that Alibaba is not, in fact, providing any sort of guarantee. Rather, Alibaba is making the ultimate and unilateral decision, exercising discretion (wholly counter to a "guarantee") to deny such benefits under the advertised protections, when the sellers have failed to ship products (timely, or at all), and when products are demonstrably defective or the buyer receives a product that was not the product advertised on Alibaba.com. Alibaba has systemically failed to provide buyers with the protections guaranteed and promised under the Trade Assurance and Alibaba Guaranteed policies, rendering those promised protections illusory.

**Alibaba systemically, repeatedly, and continually has failed to provide refunds and compensation to buyers for issues that fall squarely within its Trade Assurance Policy and Alibaba Guaranteed**

73.    As detailed below, in online forums, putative Class Members have documented the illusory nature of Alibaba's buyer protections, documenting their experiences ordering products on Alibaba.com that resulted in delivery and product issues that ostensibly triggered the Trade Assurance Policy and Alibaba Guaranteed.

74.    These delivery and product issues deprived buyers of the utility of the products for their own use and the value of the products.

75.    In addition, these delivery and product issues resulted in buyers having to incur additional costs including shipping container demurrage charges, port demurrage charges, U.S. Customs intensive exam charges, and other related charges that were a direct and foreseeable result of sellers' non-compliance with U.S. Customs, in addition to being deprived of the utility of the products for their own use and the value of the products.

28
CLASS ACTION COMPLAINT

**Online complaints underscore the widespread nature of the problem**

76.    Publicly available online reviews and customer feedback for Alibaba.com underscore that the Plaintiffs' experiences are not isolated incidents.

77.    On the Better Business Bureau ("BBB") website, Alibaba has an "F" rating and 1 out of 5 stars average for customer reviews:[31, 32]

**BBB Rating**



**F**

Reasons for rating

- Failure to respond to 128 complaint(s) filed against business
- 131 complaint(s) filed against business

**BBB Accreditation & Rating**



Alibaba Group (US) Inc. is NOT a BBB Accredited Business.

To become accredited, a business must agree to BBB Standards for Trust and pass BBB's vetting process.

Why choose a BBB Accredited Business?

**Customer Review Ratings**

★☆☆☆☆ 1.13

Average of 40 Customer Reviews

---

[31] https://www.bbb.org/us/ca/sunnyvale/profile/online-retailer/alibaba-group-us-inc-1216-1531774 (last accessed 5/9/2026).
[32] https://www.bbb.org/us/ca/sunnyvale/profile/online-retailer/alibaba-group-us-inc-1216-1531774/customer-reviews (last accessed 5/9/2026).

29
CLASS ACTION COMPLAINT

78.    The following are a small sample of the numerous reviews on the Better Business Bureau ("BBB") website that evidence Alibaba's aforementioned wrongful conduct:

79.    On December 30, 2025, a putative Class Member posted on the BBB website they purchased stair railings for approximately $2,000 from a seller on Alibaba and paid an additional $750 to guarantee dispatch within 10 days and delivery within 25 days; the seller agreed but did not dispatch until December 22, 2025, far outside both deadlines, while falsely claiming the goods were already in transit and allegedly uploading fabricated shipping records to conceal the delay. Despite buyer evidence of breach and deception, Alibaba's Trade Assurance program failed to provide relief, instead siding with the seller and refusing a refund:

> **Initial Complaint**                    Type: 🛒 Product Issues
> Date: 12/30/2025                          Status: ✂ Unanswered
>
> On or about October 29, 2025, I purchased railings for stairs for about $2000 from a seller on alibaba. During negotiations, I informed the seller that I needed the products by the first week of December because I am completing renovations to list my home by the end of the year. Seller agreed and charged me $600 plus $150 extra to guarantee delivery within 25 days after the products were dispatched. The seller has 10 days to dispatch. When products did not appear, I filed a grievance with alibaba's trade insurance. ▓▓▓▓ did not respond until 2 days ago. During this time, I discovered that the seller did not dispatch until December 22, 2025 well outside of the 10 days deadline dispatch and also beyond the 25 days for delivery. Alibaba did not respond to assist the seller with regards to the above fraud. This is a clear breach of contract yet alibaba did nothing to help and sided with the fraudulent seller. This is a common practice. Although customers pay for trade insurance, the agents protect the Chinese sellers even when they are wrong. For a month the seller lied and told me that the goods were at the ▓▓▓▓. However, the attached files shows that the goods were never in the ▓▓▓▓ and just left ▓▓▓▓ on 12/2225. The seller uploaded fake tags that will be used when the products actually arrive in the ▓▓▓▓ in order to conceal these lies. Alibaba is aware of all of this and did nothing to stop it and in fact conspired with the seller to commit these acts of fraud. I lost money as I could not list my property and the company refuses to give me a refund or even assist at all. This is not the first time I dealt with problems with alibaba and one time I received a product that did not work at all yet alibaba did not give me back my money. Something needs to be done about these scammers and grifters of US citizens

80.    On October 5, 2023, a putative Class Member posted on the BBB website that a dispute had been opened with Alibaba Trade Assurance after the buyer never received the product after paying $1,700.  Alibaba responded that the supplier's account had been "disabled", Alibaba was "unable to help" further with the trade dispute, and informed the buyer that "your complaint case has to be closed now" without providing any refund.  Notably, Alibaba recognized that the

CLASS ACTION COMPLAINT

buyer had paid $1,700 without receiving the product and proffered the excuse that "to terminate ones account is the severest punishment we can make against our members" instead of providing the refund guaranteed by the Trade Assurance Policy for a product that failed to arrive. Indeed, in responding to the complaint, Alibaba acknowledged (likely referring to the Trade Assurance Policy and/or Alibaba Guarantee) the purported guarantee and protections afforded buyers on Alibaba.com that include "**100% payment protection**".





81.    On May 8, 2024, a putative Class Member posted on the BBB website that a dispute had been opened with Alibaba Trade Assurance but was never resolved and Alibaba had *not* only failed to provide a refund, but had ceased to communicate with the buyer:



**Initial Complaint**
05/08/2024

**Complaint Type:** Service or Repair Issues
**Status:** Unanswered

I have purchased 190pairs of house slipper, product arrived only 187pairs with items color/size count mismatch, item presented in EXTREMELY poor and unsellable quality. Paid $367.07, opened dispite with alibab via trade-assurance but dispute has been going on for the past 12days from today 05/06/24, Alibaba case handler completrly ghosted me and refused to handle the case nor step in to provide me the refund. Alibaba is the worse business, their trade-assurance is merely false advertisement.

82.    On December 21, 2023, a putative Class Member posted on the BBB website that, upon receiving the wrong and defective products, followed the process of the "guarantee and assurance of Alibaba", yet despite the defects in the products being fully documented by the buyer and acknowledged by Alibaba, Alibaba failed to provide a refund:



**Initial Complaint**
12/21/2023

**Complaint Type:** Product Issues
**Status:** Unanswered

Alibaba aligned ** with a vendor on the website with "guarantees of product" on a large blanket order. We made first payment on 3/28/23 ($3,962.55), and final two payments on 5/4/23 ($3,962.55) + ($2,410.14) totalling $10,335.24. We had had samples made that were a separate charge, but everything had to be approved prior to order. Once we approved the samples then we took the next steps. The process seemed legitimate and that is why we proceeded to the full order. The order arrived in 4 separate deliveries in overstuffed boxes that didn't hold up. Once opening a box we realized they sent us a different color and 100% had huge manufacturing defects. Each blanket was 100% unsellable and not even possible to use. We even attemped to call a local US factory to see if they can be salvaged or repaired which everyone stated it is not possible. We followed the process of the "guarantee and assurance of Alibaba" that its vendors would correct the obvious errors. Each person at Alibaba and Vendor acknowledged the HUGE mistakes made by the vendor, but here we are in December still stuck holding inventory of the unsellable item and they won't send new blankets without further payments. The agreement was the vendor was supposed to pick these items up and deliver the correct blankets back in August 2023. Now Alibaba is saying we should take it up with the vendor as we are outside the assurance process. We have NEVER once stopped the assurance or guarantee process and have been only communicating on the Alibaba website. The thought was that this would protect us from any miscommunication. We had a LARGE bait and switch!!! Alibaba should force the vendor to correct this immiediatly or refund us our money. THIS WAS A SCAM and everyone at Alibaba are not helping even though each acknowledges this error and says it will be fixed! We have ALL communication saved to avoid from them trying to delete or remove access.

CLASS ACTION COMPLAINT

83.    In addition to the BBB website, reviews on other internet sites document Alibaba's wrongful conduct and in particular the illusory nature of the guarantees. For example:

84.    On September 11, 2024, a putative Class Member posted on TrustPilot.com that "the supposedly 'Easy Return' Alibaba process [] is really a debate between you and seller" and "[d]espite irrefutable evidence, Alibaba may deny your return and refund":



85.    Similarly, on September 9, 2024, a different putative Class Member posted on TrustPilot.com that after filing a dispute, Alibaba failed to intervene and provide a refund:



CLASS ACTION COMPLAINT

86.    Another putative Class Member posted on September 4, 2024 on TrustPilot.com: "Don't believe the Trade Assurance Lie" because even with substantive documentation in her favor, "Alibaba sided with the seller" and failed to provide a refund or compensation:



87.    On March 20, 2024, a putative Class Member posted to TrustPilot.com, "I've experienced multiple instances where Alibaba failed to uphold its Trade Assurance Policy. Despite providing ample evidence, they consistently sided with Chinese suppliers":



88.    Moreover, on March 10, 2024, yet another TrustPilot.com review by a putative Class Member indicated that Alibaba "is slow to resolve disputes" and "ignores reality of

34

CLASS ACTION COMPLAINT

transaction despite all facts":

89.    Putative Class Members also have posted numerous reviews on Reddit.com that further evidence Alibaba's wrongful conduct.[33]  A putative Class Member posted on Reddit that "Alibaba serves its sellers and allows them to cheat its customers" and "Trade Assurance is a con to suck in buyers":[34]

---

[33] https://www.reddit.com/r/smallbusiness/comments/wqopeo/is_alibabacom_legit/?captcha= (last accessed 5/9/2026).

[34] https://www.reddit.com/user/dissatisfiedbuyer/ (last accessed 5/9/2026).

90. The aforementioned online reviews are a fraction of the overwhelming volume of online reviews posted by putative Class Members evidencing Alibaba's wrongful conduct that forms the basis of this action.

91. These widespread buyer complaints are not merely instances of poor customer service but are symptomatic of Alibaba's Trade Assurance Policy and Alibaba Guaranteed that are illusory at their core. The pattern of denying claims or deflecting responsibility, even in the face of clear evidence, illustrates that Alibaba's commitment to provide refunds and compensation is completely non-existent and subject to its own unbridled discretion, rather than objective criteria or the terms it advertises.

**Alibaba's wrongful conduct is uniformly directed toward Plaintiffs and the Class.**

92. Alibaba falsely represented at relevant times and continues to falsely represent to buyers that the Trade Assurance Policy and Alibaba Guaranteed will protect buyers by providing refunds and compensation for delivery and product issues.

93. Had Plaintiffs and Class Members known that Alibaba would not honor the terms of the Trade Assurance Policy and Alibaba Guaranteed for products purchased on Alibaba.com that had delivery issues (e.g., not shipped, missing, customs non-compliance, etc.) or product issues (e.g., defective, incorrect, damaged, etc.), Plaintiffs and Class Members would not have used Alibaba.com as an e-commerce platform and purchased products on Alibaba.com.

94. Had Plaintiffs and Class Members known that Alibaba would fail to provide refunds and compensation under the plain terms of the Trade Assurance Policy and for Alibaba Guaranteed for delivery and product issues, Plaintiffs and Class Members would not have purchased products on Alibaba.com.

CLASS ACTION COMPLAINT

95. Plaintiffs and Class Members had no way of discerning that Alibaba's representations were false and misleading, and that Alibaba had made misrepresentations and/or omissions regarding the administration of its widely publicized Trade Assurance Policy and Alibaba Guaranteed protections.

96. Plaintiffs and Class Members who purchased products on Alibaba.com would not have purchased the products through this e-commerce platform if Alibaba's failure to provide refunds and compensation under the Trade Assurance Policy and Alibaba Guaranteed had been disclosed, and they had not been misled about Alibaba's "money back guarantee".

97. Plaintiffs and Class Members relied upon Alibaba's misrepresentations and/or omissions regarding its Trade Assurance Policy and Alibaba Guaranteed as set forth herein when using Alibaba.com as an e-commerce platform and purchasing products on Alibaba.com.

98. Alibaba knows, or should have known, at relevant times, that it had no intention of administering its Trade Assurance Policy and Alibaba Guaranteed in a manner consistent with its representations by providing refunds and compensation as stated.

99. Alibaba systemically, repeatedly, and continually has used the same disingenuous and dilatory ploys to deny refunds and compensations to buyers, including Plaintiffs and the Class, for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed.

100. The Trade Assurance Policy and Alibaba Guaranteed are illusory because Alibaba's performance – the provision of refunds or compensation – is conditional on events and determinations wholly within its control and is left entirely to its own will, whim, and discretion. While misrepresenting that it *will* protect buyers and provide refunds for specified issues, Alibaba, in practice, reserves the power to decide if and when it will do so, irrespective of the evidence

presented by buyers like Plaintiffs and the Class. This makes the 'assurance' offered by the policy a matter of Alibaba's grace, not a contractual right for the buyer.

101. Alibaba's numerous aforementioned representations on its website and other public facing advertisements, guides and press releases about Trade Assurance and Alibaba Guaranteed state, and create the expectation of, a binding commitment with buyer for Alibaba to provide refunds and compensation. These representations make clear that Alibaba purportedly is shouldering the risk and providing a 100% guarantee for "**any issues related to the purchase**":[35]

**Digital commerce on Alibaba.com**

✓ **Payment security**

Our escrow service means your payments are held and released to the supplier after the products are received and confirmed.

✓ **Increased trust & confidence**

When you source on Alibaba.com, you have the peace of mind of knowing that you can track the progress of your order and are protected against fraud, shipping, and product quality issues.

✓ **Platform support**

We assist you in reaching a satisfactory resolution, including providing refunds and compensation for any issues related to the purchase.

102. However, these representations are deceptive because they fail to disclose that the actual fulfillment of this 'guarantee' is subject to Alibaba's unfettered discretion, rendering the promise illusory.

103. Plaintiffs and Class Members chose to purchase products on Alibaba.com based on representations that Alibaba would provide, as a matter of contractual right, refunds and

---

[35] Trade Assurance Page; *see also* Trade Assurance Guide

CLASS ACTION COMPLAINT

compensation for 1) product quality issues and 2) any issues related to the purchase of products on Alibaba.com, including products failing to clear U.S. Customs, products failing to arrive at all, shipping issues, damaged and defective products, and incorrect products being shipped.

**Plaintiffs and Class Members have suffered damages as a result of Defendants' misrepresentations and omissions.**

104. When products arrived defective, Plaintiffs and Class Members were deprived of the utility of the products for their own use or the value of the products.

105. When products failed to arrive at all, Plaintiffs and Class Members were deprived of the utility of the products for their own use or the value of the products.

106. The purported protection offered by Alibaba's Trade Assurance Policy and Alibaba Guaranteed was the reason Plaintiffs and Class Members chose to use Alibaba.com as an e-commerce platform and proceed with their purchases of products on Alibaba.com, including the purported protection that Plaintiffs and Class Members would receive refunds and compensation for **any** delivery and product issues related to the purchase of products on Alibaba.com.

107. Had Plaintiffs and Class Members been aware that Alibaba would fail to provide refunds and compensation under the plain terms of the Trade Assurance Policy and Alibaba Guaranteed, Plaintiffs and Class Members would not have purchased products on Alibaba.com.

108. Therefore, Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Alibaba's unfair, dishonest and unlawful practices including the value of the products that were defective, damaged, incorrect, or never arrived at all.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### Plaintiff Eugene Cobb

109.    On July 3, 2024, Mr. Cobb purchased four (4) bathroom sinks on Alibaba.com for $3,810, with an additional $1,800 in shipping costs and $1,498.78 in freight costs, totaling $7,088.98. Mr. Cobb paid using Alibaba.com.

110.    The Alibaba.com supplier was Shenzhen Onebest Furniture Co., Ltd.

111.    Mr. Cobb was aware of and relied upon Trade Assurance Policy and/or Alibaba Guaranteed to protect his purchase before purchasing the sinks.

112.    Three (3) sinks would not drain properly because the bottoms of the basins were not sloped toward the drain, resulting in significant standing water at the bottom of the sinks. Thus, the sinks were unusable because soap, toothpaste and any other substances that were rinsed into the sinks would remain in the sinks.

113.    Additionally, all four (4) sinks arrived with significant chips, scratches and discoloration in the stone finishes.

114.    Mr. Cobb submitted a claim on November 25, 2024 under Alibaba's Trade Assurance Policy and provided thirty-six (36) photos documenting that the sinks would not drain properly and arrived with significant damage, including chips, scratches and discoloration in the stone finishes.

115.    Alibaba deflected the blame onto Mr. Cobb, stating "you should make clear requirement with the supplier before make order and as they had show[n] you the picture for the product and got your confirmation before shipment" and "since the supplier had provide the design draft for you and got your confirmation for production…we can't simply for the supplier based on

40
CLASS ACTION COMPLAINT

these video." Alibaba represented to Mr. Cobb that he should have been able to observe in the design draft provided by the supplier that that the sinks would not drain properly, and that it was Mr. Cobb's fault the sinks would not drain. From a design standpoint, however, the sinks were standard, off-the-shelf sinks, and Plaintiff Cobb had no input in the design of the sinks.

116. Acknowledging that all four (4) sinks were defective, Alibaba first offered a $150 refund, then a $350 refund, then a $400 refund, and then a $450 refund.

117. Mr. Cobb declined these inadequate proposals, and Alibaba then refused to process the dispute any further.

118. Mr. Cobb still has the 4 sinks, which remain damaged, defective, and unusable.

119. To date, Alibaba has failed to compensate Mr. Cobb under the Trade Assurance Policy.

120. Mr. Cobb has been directly injured by Alibaba's conduct.

121. Mr. Cobb's experience is indicative of the illusory promise of Alibaba's Trade Assurance Policy. Despite providing undisputed evidence of damaged, unusable, and defective products – facts Alibaba did not contest – the decision to deny meaningful relief rested entirely within Alibaba's control and discretion, exercised here to deflect responsibility and ultimately deny the promised protection.

**Plaintiff Senad Djulamerovic**

122. On March 9, 2025, Mr. Djulamerovic purchased a solar energy system, which included solar panels, inverters, batteries and other components, on Alibaba.com for $24,050 and $5,950 for shipping, totaling $30,000. Mr. Djulamerovic paid using Alibaba.com.

123. Mr. Djulamerovic received payment confirmation from Alibaba.com.

CLASS ACTION COMPLAINT

124. The Alibaba.com supplier was Helios Technology Co., Ltd.

125. Mr. Djulamerovic was aware of and relied upon the Trade Assurance Policy and/or Alibaba Guaranteed to protect his purchase before purchasing the solar energy system.

126. On July 22, 2025, the shipment was delivered to the freight forwarder retained by Mr. Djulamerovic to handle the incoming shipment at the port.

127. On July 24, 2025, Mr. Djulamerovic, along with an agent of the freight forwarder, inspected five (5) wood crates of solar panels which included thirty-six (36) pieces in each package.

128. During the inspection, the agent photographed Mr. Djulamerovic opening all wood crates which had not been previously opened.

129. During this inspection, Mr. Djulamerovic and the agent of the freight forwarder discovered that only the solar panels had been included in the shipment. The inverters, batteries and other components had been omitted from the shipment.

130. The total value of the missing goods was $21,360.

131. Mr. Djulamerovic submitted a claim on or about July 28, 2025 under Alibaba's Trade Assurance Policy and provided extensive documentation that the inverters, batteries and other components purchased as part of the solar energy system were not included in the shipment.

132. In fact, the packing list that came with the shipment listed only the panels—and did not list the inverters, batteries and other components.

133. For the next eight (8) months, the Alibaba Trade Dispute Mediation Department repeatedly asked for the same documentation and information that Mr. Djulamerovic had already provided; essentially, the Alibaba Trade Dispute Mediation Department treated each

communication with Mr. Djulamerovic as if it were the first communication without appearing to have any knowledge of the documentation and information that Mr. Djulamerovic previously had painstakingly gathered and submitted.

134. Mr. Djulamerovic also provided thirty (30) screenshots of conversations with the supplier, evidencing the supplier's failure to send the missing good while Alibaba Trade Dispute Mediation Department failed to acknowledge this evidence.

135. During this period, the Alibaba Trade Dispute Mediation Department repeatedly provided the same response:

> Thank you for your patience and understanding.
>
> Our dispute resolution team is currently working on reviewing all evidence and negotiating with the seller to resolve your case. This process may take some time, as we need to ensure all details are thoroughly examined.
>
> We understand that waiting can be frustrating, and we greatly appreciate your cooperation. Please rest assured that we are doing everything we can to resolve this matter as quickly as possible. We will keep you updated on any progress.

136. On or about November 23, 2025, Mr. Djulamerovic informed the Alibaba Trade Dispute Mediation Department that he had already uploaded the requested documentation "four times so far, we keeping going in circles" and further stated, "[a]ll transactions were done through Alibaba as per your instructions not to do business outside of your website."

137. In response, the Alibaba Trade Dispute Mediation Department continued its dilatory and disingenuous runaround by stating, "the bill of lading, the one you provided is very blurry and unclear. Could you please provide a clearer version of the bill of lading?" when in fact the documents that Mr. Djulamerovic had provided were legible.

43
CLASS ACTION COMPLAINT

138.    Finally, on March 12, 2026, Mr. Djulamerovic informed the Alibaba Trade Dispute Mediation Department that the Alibaba "supplier confirmed receipt of funds and clearly confirmed that he shipped the batteries and inverters.  Control report and packing list clearly state that only the solar panels were shipped and received":

> We keep going back in Circles as you keep asking for the same thing over and over again without reviewing it. I am submitting again the correspondence that clearly states that supplier confirmed receipt of funds and clearly confirmed that he shipped the batteries and inverters. Control report and packing list clearly state that only solar panels were shipped and received. . Price of the solar panels was only $8,000. On the invoice I was charged for shipment of dangerous goods, and on the bill of lading it clearly states that only regular container was used.

139.    To date, Mr. Djulamerovic has provided the Alibaba Trade Dispute Mediation Department extensive documentation evidencing that the shipment contained only the panels; that the inverters, batteries and other components were omitted from the shipment; and that he paid for the inverters, batteries and other components.

140.    To date, the Alibaba Trade Dispute Mediation Department has failed to provide any reason for failing to honor the Trade Assurance policy.  In fact, the course of action taken by the Alibaba Trade Dispute Mediation Department has been to ignore the undisputed documentation and information provided by Mr. Djulamerovic while requiring no information, documentation or action on the part of the Alibaba supplier.

141.    To date, the inverters, batteries and other components that Mr. Djulamerovic paid for as part of the solar energy system have never been shipped nor delivered to Mr. Djulamerovic.

142.    To date, Alibaba has failed to compensate Mr. Djulamerovic under the Trade Assurance Policy for $21,360, which is the value of the missing goods.

143.    In addition, Mr. Djulamerovic incurred a customs fee in the amount of $7,723.28 and a freight forwarder fee in the amount of $936.06 for the incomplete shipment.  In the future, if Mr. Djulamerovic orders replacements for the missing goods from another supplier, he will incur additional customs and freight forwarder fees.

144.    Mr. Djulamerovic's experience is indicative of the illusory promise of Alibaba's Trade Assurance Policy. Despite providing undisputed evidence that the missing products failed to be shipped or arrive – facts Alibaba did not contest – the decision to deny meaningful relief rested entirely within Alibaba's control and discretion, exercised here by denying the promised protection on the pretext that Mr. Djulamerovic provided a "blurry" bill of lading.

**Plaintiff Peter Hunt**

145.    On October 18, 2024, Mr. Hunt purchased a wet/dry sauna on Alibaba.com.

146.    The Alibaba.com supplier was Kunshan Oasis Sauna Equipment Co.

147.    The Alibaba.com web page represented that the product was constructed of "solid wood" and the wood was "Canadian hemlock":



CLASS ACTION COMPLAINT

148.    The cost of the sauna was $1,050 and the cost of shipping was $840, totaling $1,890. Mr. Hunt paid using Alibaba.com.

149.    Mr. Hunt was aware of and relied upon the Trade Assurance Policy and/or Alibaba Guaranteed to protect his purchase before purchasing the sauna.

150.    On December 20, 2024, the sauna was delivered to Mr. Hunt.

151.    The packaging and the sauna arrived badly damaged and unusable, and the sauna was constructed of particle board covered by a thin veneer.

152.    On December 20, 2024, Mr. Hunt informed Alibaba.com that the sauna was damaged and unusable, and submitted a claim under the Trade Assurance Policy requesting a refund for the product.

153.    Mr. Hunt provided detailed information when he submitted the claim, including numerous photographs, documenting the damage to the packaging and the sauna.

154.    Mr. Hunt also supported his request on the patent misrepresentation that the product was constructed of "solid wood" and that the wood was "Canadian hemlock," while the product that arrived was constructed of particle board with a thin veneer.

155.    Alibaba did not dispute that the packaging and sauna were damaged, nor that the construction materials of the sauna had been misrepresented, and instructed Mr. Hunt to resolve the issue with the seller.

156.    The seller offered to provide Mr. Hunt a bottle of glue and $50.

157.    However, the sauna was damaged beyond repair, and a bottle of glue and $50 were wholly inadequate to compensate Mr. Hunt for the unusable sauna that cost, with shipping, $1,890.

158.    Moreover, the particle board and veneer construction of the sauna would be susceptible to the moisture incidental to use as a wet sauna while solid wood construction would be resistant to moisture in that application.  Therefore, the particle board and veneer construction precluded any use of the product as a wet sauna.

159.    When Mr. Hunt informed Alibaba that the seller's offer was unacceptable and again requested a refund under the Trade Assurance Policy, Alibaba refused to compensate Mr. Hunt for the damaged product, instructing him again to contact the seller.

160.    Mr. Hunt escalated the claim under the Trade Assurance Policy, and Alibaba again refused to compensate Mr. Hunt for the damaged and unusable sauna, which was not constructed with solid wood as represented.

161.    When Mr. Hunt requested a chargeback through his bank, Alibaba stated that it would no longer process the dispute because Mr. Hunt had requested a chargeback.

162.    Mr. Hunt's bank did not grant his request for a chargeback, stating that Mr. Hunt had received a sauna as he intended to purchase.  The bank would not consider the sauna arriving damaged and unusable as a basis for the chargeback.

163.    Alibaba repeatedly stated that because Mr. Hunt had requested a chargeback, that Alibaba would no longer process the dispute, in spite of the fact that the bank denied the request for a chargeback and Mr. Hunt provided documentation to Alibaba that the chargeback had been denied.

164.    To date, Alibaba has failed to compensate Mr. Hunt under the Trade Assurance Policy.

165.    Mr. Hunt has been directly injured by Alibaba's conduct.

166. Mr. Hunt's experience is demonstrative of the illusory promise of Alibaba's Trade Assurance Policy. Despite providing undisputed evidence of a damaged, unusable, and misrepresented product – facts Alibaba did not contest – the decision to deny meaningful relief rested entirely within Alibaba's control and discretion, exercised here to deflect responsibility and ultimately deny the promised protection.

**Plaintiff Adnan Merdach**

167. On June 14, 2024, Mr. Merdach purchased a 2023 Lexus RX 350H vehicle on Alibaba.com from a supplier in Japan for $7,000, with an additional $2,000 for shipping and $4,200 for shipping insurance, totaling $13,200. Mr. Merdach paid using Alibaba.com.

168. The Alibaba.com supplier was D&J Plumbing Automobiles.

169. Mr. Merdach was aware of and relied upon the Trade Assurance Policy and/or Alibaba Guaranteed to protect his purchase before purchasing the vehicle.

170. During the course of the vehicle's shipment from Japan to the U.S., Mr. Merdach received via email an invoice from "Mexico Interpol" for $10,000 for processing and handling the vehicle in transit through Mexico and invoices from the purported shipping company for $11,700 for a demurrage charge; $8,800 for customs fees in Mexico; $6,450 for customs duties and tax, bond fees, broker fees, and additional inspection fees in Texas; $3,250 for an "importation license"; and $2,500 for delivery of the vehicle from the port of entry in Texas to Virginia.

171. Mr. Merdach paid all invoices in order to receive delivery of the vehicle.

172. When Mr. Merdach later contacted the shipping company via its website—as opposed to responding directly to the emails he had received—an agent of the shipping company informed Mr. Merdach that the vehicle was not shipped through the company, and Mr. Merdach

consequently discovered that all emails and invoices from Mexico Interpol and the purported shipping company were fraudulent.

173.    Upon information and belief, the Alibaba.com supplier was acting as the purported shipping company and "Mexico Interpol" considering that only the Alibaba.com supplier knew the details of the transaction and was in possession of Mr. Merdach's contact information.

174.    The Alibaba.com supplier that had sold the vehicle then sent Mr. Merdach a paper check for $148,000 as a purported "refund" from Alibaba.com.    The supplier, using an Alibaba.com email address and Alibaba.com logo, represented to Mr. Merdach that sending this paper check was a "mistake" and the supplier demanded that Mr. Merdach cash the check and wire $148,000 to the supplier before the draft would have time to clear.

175.    By this time, Mr. Merdach recognized that this Alibaba.com supplier was conducting a scam and refused to deposit the check and wire the money to the supplier.

176.    Mr. Merdach never received the Lexus vehicle.

177.    Mr. Merdach submitted a claim through Alibaba's Trade Assurance Policy and provided extensive documentation evidencing that the Alibaba.com supplier was conducting a scam and that he never received the product purchased on Alibaba.com.

178.    Alibaba denied the claim and deflected responsibility by instructing Mr. Merdach to contact a lawyer in Japan, the alleged residence of the supplier, to pursue the matter further.

179.    In the final email from Alibaba denying the claim, Alibaba represented to Mr. Merdach that "Alibaba.com is an information exchange platform only"; "We have no authority to impose compulsory sanction on any member"; and "if there is no agreement reached…what we can do is only to close this complaint case":

Please also be advised that Alibaba.com is an information exchange platform only, what we can do is to encourage both parties to negotiate with each other and get the dispute resolved, which depends on your both parties' willingness. We have no authority to impose compulsory sanction on any member. Therefore if there is no agreement reached in due time about how to solve this trade dispute, what we can do is only to close this complaint case with one final judgment according to the proofs we have collected from you both parties. And if it is proved that the defendant should bear the responsibility for this trade dispute, then as punishment we will disable supplier's Alibaba account. This is the utmost Alibaba.com can do for you.

180.　This admission is inconsistent with the protections purportedly afforded under the Trade Assurance Policy, evidencing that a decision to refund the buyer rests solely with the supplier, and not Alibaba.

181.　To date, Alibaba has failed to compensate Mr. Merdach under the Trade Assurance Policy.

182.　As stated, Mr. Merdach has been directly injured by Alibaba's conduct

183.　Mr. Merdach's experience underscores the illusory promise of Alibaba's Trade Assurance Policy.  Faced with an Alibaba.com seller that was demonstrably conducting a scam and a product that never arrived, Alibaba's response was not dictated by the clear evidence or the policy's purported guarantees, but by its own discretionary decision to deflect responsibility, thereby withholding the promised refund and demonstrating the non-binding nature of its "assurance".

**Plaintiff Steven Poslof**

184.　On July 17, 2025, Mr. Poslof purchased one hundred (100) household energy storage cells on Alibaba.com for $4,700, with an additional $800 for shipping, totaling $5,500 on Alibaba.com.  Mr. Poslof paid using Alibaba.com.

185.　The Alibaba.com supplier was Shenzhen Cylaid Technology Co., Ltd.

186.　Mr. Poslof was aware of and relied upon the Trade Assurance Policy and/or Alibaba

Guaranteed to protect his purchase of the one hundred (100) household energy storage cells.

187. Upon arrival, the shipment was improperly crated and improperly packaged; the cells had been shipped upside down in violation of their design requirements and Department of Transportation hazardous material handling laws, and as a result of the improper shipping, were damaged; the cells were also damaged by punctures and were leaking; and, the legally required shipping documents had been removed—all conditions which were extensively documented by shipping authorities and photographs.

188. Mr. Poslof was unable to use the cells and incurred a $2,200 disposal fee.

189. On September 16, 2025, Mr. Poslof submitted a claim under the Trade Assurance Policy, providing extensive documentation and photographs evidencing that the household storage cells had been improperly packaged, shipped, and were damaged to the extent that they were unusable.

190. Alibaba denied the claim, and when Mr. Poslof request further explanation, Alibaba's response was that Mr. Poslof had not provided evidence to support his claim.

191. When Mr. Poslof requested what other evidence was needed to support his claim, Alibaba failed to respond.

192. To date, Alibaba has failed to compensate Mr. Poslof under the Trade Assurance Policy.

193. As stated, Mr. Poslof has been directly injured by Alibaba's conduct

194. Mr. Poslof's experience underscores the illusory promise of Alibaba's Trade Assurance Policy. Faced with improperly packaged and shipped products that had been damaged beyond use, Alibaba's response was not dictated by the clear evidence or the policy's purported

guarantees, but by its own discretionary decision, thereby withholding the promised refund and demonstrating the non-binding nature of its "assurance".

* * *

195.    As described above, each Plaintiff encountered specific representations by Alibaba regarding the delivery and product quality terms related to Alibaba's Trade Assurance Policy and/or Alibaba Guaranteed.

196.    Despite the knowledge that its Trade Assurance Policy [and Alibaba Guaranteed] is capriciously applied, in a manner that remains wholly within Alibaba's unfettered discretion, and despite having ample opportunity to refund and compensate Plaintiffs according to the representations made about its Trade Assurance Policy [and Alibaba Guaranteed], Alibaba uniformly failed to disclose that any relief is left entirely to its own will and whim, thereby rendering the promise of protection illusory.

197.    Had Alibaba disclosed that its Trade Assurance Policy [and Alibaba Guaranteed] would not be applied according to the representations made, Plaintiffs would not have purchased products on Alibaba.com.

### TOLLING OF THE STATUTE OF LIMITATIONS

#### Fraudulent Concealment Tolling

198.    Throughout the time period relevant to this action, Defendants concealed and failed to disclose to Plaintiffs and Class Members vital information regarding Defendants' administration of their Trade Assurance Policy and Alibaba Guaranteed.  Defendants kept Plaintiffs and Class Members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiffs nor the other Class Members could have discovered that Defendants systemically,

repeatedly, and continually failed to administer the Trade Assurance Policy and Alibaba Guaranteed as represented, even upon reasonable exercise of diligence.

199.    Defendants knew that they systemically, repeatedly, and continually failed to administer the Trade Assurance Policy and Alibaba Guaranteed as represented, but continued to advertise and publicize to Plaintiffs and Class Members the protections, including "money-back guarantee" that Alibaba would provide buyers for shipping issues, missing products, and other product issues arising from the purchase of products on the Alibaba platform.  In doing so, Defendants concealed from or failed to notify Plaintiffs and Class Members about their failure to honor and administer the Trade Assurance Policy and Alibaba Guaranteed as represented.

200.    Plaintiffs and Class Members justifiably relied on Defendants to provide accurate, complete and not misleading or confusing information regarding the Trade Assurance Policy and Alibaba Guaranteed, as such information was hidden and not discoverable through reasonable efforts by Plaintiffs and Class Members.

201.    Thus, the running of all applicable statutes of limitation has been tolled and suspended with respect to any claims that the Plaintiffs and Class Members have sustained as a result of Defendants' administration of the Trade Assurance Policy and Alibaba Guaranteed and by virtue of the fraudulent concealment doctrine.

**Estoppel**

202.    Defendants were under a continuous duty to disclose to Plaintiffs and Class Members that Defendants systemically, repeatedly, and continually failed to administer their Trade Assurance Policy and Alibaba Guaranteed as represented to Plaintiffs and Class Members.

203.    Defendants actively concealed that they unfairly, dishonestly, and unlawfully

denied refunds and compensation to Plaintiffs and Class Members for products that had delivery or product issues (not shipped, missing, defective, incorrect, damaged, etc.), when these circumstances were covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed.

204.    Plaintiffs and Class Members reasonably relied upon Defendants knowing and actively concealing these material facts.

205.    Defendants are accordingly estopped from relying on any statute of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

206.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of themselves and on behalf of a Nationwide Class, defined as:

**Nationwide Class**

All persons and entities within the United States (including its Territories and the District of Columbia) who made a claim pursuant to and/or covered by the Alibaba Trade Assurance Policy or Alibaba Guaranteed.

Plaintiffs also bring this action on behalf of the following State Classes, each a subset of the Nationwide Class:

**California Class:** All members of the Nationwide Class who reside in the State of California.

**New York Class:** All members of the Nationwide Class who reside in the State of New York.

**Arizona Class:** All members of the Nationwide Class who reside in the State of Arizona.

**Ohio Class:** All members of the Nationwide Class who reside in the State of Ohio.

**Virginia Class:** All members of the Nationwide Class who reside in the

CLASS ACTION COMPLAINT

Commonwealth of Virginia.

207.    Excluded from all classes are Defendants, as well as Defendants' employees, affiliates, officers, and directors, and the judge and court staff to whom this case is assigned.

208.    Plaintiffs reserve the right to modify and/or add to the Nationwide Class prior to class certification.

## Fed. R. Civ. P. 23(a) Prerequisites

209.    **Numerosity.**  The Nationwide Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class Members is unknown and is within the exclusive control of Defendants, reportedly over 15.45% of all buyer traffic on Alibaba.com comes from the U.S.,[36] with total monthly users at approximately 25.89 million.[37]

210.    **Commonality.**  The Claims of Plaintiffs and the Nationwide Class involve common questions of fact and law that will predominate over any individual issues.

211.    These common questions include, but are not limited to:

a.    Whether Alibaba's Trade Assurance Policy is an illusory contract because Alibaba's performance thereunder (i.e., providing refunds or compensation) is conditional on facts or events wholly under its control and bringing it about is left wholly to its own will and discretion;

b.    Whether the Alibaba Guarantee is illusory, including because Alibaba's performance thereunder (i.e., providing refunds or compensation) is conditional on facts or events wholly under its control and bringing it about is left wholly to its own will and discretion;

c.    Whether Defendants failed to provide refunds and compensation to Plaintiffs and

---

[36] https://www.semrush.com/website/alibaba.com/overview/ (last visited 5/12/2026)
[37] *See id.*

55
CLASS ACTION COMPLAINT

the Class arising from delivery or product issues (not shipped, missing, defective, incorrect, damaged, etc.) related to the purchase of products on Alibaba.com under the plain terms of the Trade Assurance Policy and Alibaba Guaranteed;

d.      Whether Defendants knew or should have known that their misrepresentations regarding the Trade Assurance Policy and Alibaba Guaranteed were false at the time of publicizing these representations to Plaintiffs and the Class;

e.      Whether Defendants knew or should have known that they omitted material information regarding the Trade Assurance Policy and Alibaba Guaranteed on Alibaba.com, and such omissions rendered their statements on Alibaba.com about the Trade Assurance Policy and Alibaba Guaranteed false and misleading to Plaintiffs and the Class;

f.      Whether the misrepresentations in Defendants' Trade Assurance Policy and Alibaba Guaranteed constitute material facts that reasonable buyers would have considered in deciding whether to use Alibaba.com as an e-commerce platform and purchase products on Alibaba.com;

g.      Whether Defendants omitted and withheld material information about the Trade Assurance Policy and Alibaba Guaranteed that reasonable buyers would have considered in deciding whether to use Alibaba.com as an e-commerce platform and purchase products on Alibaba.com;

h.      Whether Defendants' statements regarding the Trade Assurance Policy and Alibaba Guaranteed were false and misleading because the policy and protections stated are illusory and Defendants failed to provide refunds and compensation to Plaintiffs and the Class for issues purportedly covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed,

including but not limited to delivery or product issues (not shipped, missing, defective, incorrect, damaged, etc.);

i.      Whether Defendants had a duty to disclose that they systemically, repeatedly, and continually denied refunds and compensation to Plaintiffs and the Class for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed;

j.      Whether Defendants omitted, actively concealed, and/or failed to disclose material facts that they systemically, repeatedly, and continually denied refunds and compensation to Plaintiffs and the Class for issues covered by the plain terms of their Trade Assurance Policy and Alibaba Guaranteed;

k.      Whether concealment of how Defendants administered their Trade Assurance Policy and Alibaba Guaranteed would have induced reasonable buyers to act to their detriment by purchasing products on Alibaba.com;

l.      Whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief; and

m.      Whether Plaintiffs and Class Members are entitled to damages and other monetary relief and, if so, in what amount.

212.    **Typicality.**  Plaintiffs' claims are typical of Nationwide Class Members' claims. As described herein, Plaintiffs and Class Members purchased products on Alibaba.com that resulted in delivery or product issues (not shipped, missing, defective, incorrect, damaged, etc.) **and** Plaintiffs and Class Members did not receive refunds and compensation for these issues that were covered under the plain terms of the Trade Assurance Policy and Alibaba Guaranteed.

213. Plaintiffs and Class Members have been damaged by Defendants' misconduct. Plaintiffs and Class Members have incurred similar losses related to products purchased on Alibaba.com and Defendants' failure to provide refunds and compensation under the plain terms of their Trade Assurance Policy and Alibaba Guaranteed. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members and represents a common thread of misconduct resulting in injury to all Class Members.

214. **Adequacy.** Plaintiffs will fully and adequately represent and protect the interests of the Nationwide Class because they share common interests with Class Members as a result of Defendants' misconduct.

215. Plaintiffs have retained counsel with experience in complex, commercial, multiparty, mass tort, consumer, and class action litigation.

216. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

### Fed. R. Civ. P. 23(b) Prerequisites

217. **Predominance.** Questions of law and fact common to the Nationwide Class, including those listed above, predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual damages on the matter can be readily calculated. Thus, the question of individual damages will not predominate over legal and factual questions common to the Nationwide Class. Additionally, Defendants have acted or refused to act on grounds that apply generally to the Nationwide Class, so that final injunctive relief and/or corresponding declaratory

relief is appropriate with respect to the Nationwide Class.

218.    **Superiority.** Defendants' misconduct treated buyers as a Class uniformly.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs and Class Members have all suffered and will continue to suffer economic harm and damage as a result of Defendants' wrongful conduct, which was directed toward Class Members and buyers as a whole, rather than specifically or uniquely against any individual Class Members.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without effective remedy.

219.    **Declaratory and Injunctive Relief.**  Class wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests.  Class wide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendants' discharge of their duties to perform corrective action regarding the administration of their Trade Assurance Policy.

## CAUSES OF ACTION

## COUNT I

**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. on behalf of Plaintiff Steven Poslof, the California Class and the Nationwide Class)**

220.    Plaintiffs incorporate by reference all material facts in this Complaint as though fully set forth herein.

221.    Plaintiff Steven Poslof brings this Count on behalf of himself and the California Class and the Nationwide Class.

222.    Defendants' practices as alleged herein constitute unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq.

223.    Defendants' conduct is fraudulent and unfair in that they market and promote their Trade Assurance Policy and Alibaba Guaranteed as reliable protections for buyers, while in reality, the policy and guarantees are illusory. The decision to grant or deny claims and provide refunds or compensation is not based on objective adherence to the policies stated terms but is instead subject to the arbitrary and unfettered discretion of Alibaba. This practice of promising a benefit, the conferral of which is entirely at the promisor's discretion, constitutes an unfair and fraudulent business practice.

224.    Defendants committed unlawful, fraudulent and/or unfair business practices in violation of the UCL because, among other things, Defendants 1) knew or should have known that they systemically, repeatedly, and continually denied refunds and compensation to Plaintiffs and the Class for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed; 2) knew or should have known Plaintiffs and Class Members could not learn of, or

60
CLASS ACTION COMPLAINT

discover, that Defendants failed to administer the Trade Assurance Policy and Alibaba Guaranteed as represented; 3) engaged and continue to engage in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially economically injurious to Plaintiffs and Class Members; and 4) offered an illusory promise of protection through their Trade Assurance Policy and Alibaba Guaranteed, where their performance was wholly dependent on their own discretion.

225.    Among other things, Defendants represented that the Trade Assurance Policy and Alibaba Guaranteed would provide refunds and compensation for delivery or product issues (not shipped, missing, defective, incorrect, damaged, etc.) related to the purchase of products on Alibaba.com. Because the actual administration of the Trade Assurance Policy and Alibaba Guaranteed, and the discretionary, illusory nature of the promised protections are not observable and knowable to reasonable buyers—including Plaintiffs and Class Members—buyers were deceived into using Alibaba.com as an e-commerce platform and purchasing products on Alibaba.com under the false belief that they were receiving a meaningful and enforceable guarantee of protection.

226.    Plaintiffs and Class Members have suffered injury in fact as a result of Defendants' unlawful, unfair, or fraudulent practices, in that, among other things Plaintiffs and Class Members 1) would not have purchased products on Alibaba.com, and 2) have been deprived of making an informed decision about using Alibaba.com as an e-commerce platform.

227.    When products arrive with delivery or product issues, Plaintiffs and Class members were deprived of the utility of the products for their own use or the value of the products; and, when products failed to arrive at all, Plaintiffs and Class Members were deprived of the utility of the products for their own use or the value of the products.

228.    As entities with exclusive knowledge regarding the administration of their Trade Assurance Policy and Alibaba Guaranteed, Defendants had a duty to disclose the manner in which they administered their Trade Assurance Policy and Alibaba Guaranteed, particularly in light of the fact that e-commerce on Alibaba.com poses significant risks of economic losses to Plaintiffs and Class Members without the administration of the Trade Assurance Policy and Alibaba Guaranteed as represented.

229.    Plaintiffs and Class Members reasonably expected that Defendants would administer their Trade Assurance Policy and Alibaba Guaranteed pursuant to the plain terms publicized online, and reasonably expected that Defendants would not systemically, repeatedly, and continually deny refunds and compensation to Plaintiffs and the Class for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed.  This information is and was material to Plaintiffs and Class Members.

230.    Defendants, at all times relevant, knew or should have known that Plaintiffs and Class Members did not know of, or could not have reasonably discovered, that Defendants administered their Trade Assurance Policy and Alibaba Guaranteed by systemically, repeatedly, and continually denying refunds and compensation to Plaintiffs and the Class for issues covered by the plain terms of the policy.

231.    By administering their Trade Assurance Policy and Alibaba Guaranteed in an unfair, dishonest, and unlawful manner, Defendants engaged in actionable, fraudulent conduct within the meaning of the UCL.

232.    By concealing the unfair, dishonest, and unlawful manner in which they administered their Trade Assurance Policy and Alibaba Guaranteed, Defendants engaged in

actionable, fraudulent conduct within the meaning of the UCL.

233. Had Plaintiffs and Class Members known that Defendants would deny refunds and compensation for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed, they would not have used the Alibaba.com e-commerce platform and purchased products on Alibaba.com. In addition, Plaintiffs and Class Members have lost the benefit of the bargain because products arrived with delivery or product issues or failed to arrive at all.

234. Defendants' business acts and practices alleged herein are unfair within the meaning of the UCL. Specifically, by administering their Trade Assurance Policy and Alibaba Guaranteed in an unfair, dishonest, and unlawful manner, Defendants have engaged in unfair conduct within the meaning of the UCL.

235. Defendants' misconduct is unfair within the meaning of the UCL because it offends established policy and/or is immoral, unethical, unscrupulous, and substantially economically injurious to buyers; the utility of the Trade Assurance Policy and Alibaba Guaranteed - in purportedly offering protection to buyers purchasing products on Alibaba.com - if any, is outweighed by the gravity of the consequences to Plaintiffs and other Class Members who engage in ecommerce on Alibaba.com; and it undermines or violates the stated policies underlying the California Consumers Legal Remedies Act, California Civil Code section 1750, et seq. ("CLRA"), which seeks to protect buyers against unfair and sharp business practices and promotes a basic level of honesty and reliability in the marketplace, and thus provides a sufficient predicate for Plaintiffs' claims for unfair business practices.

236. Defendants committed unlawful acts and practices by, among other things, engaging in conduct, as alleged herein, that violates the CLRA. Plaintiffs and the Class Members have

63
CLASS ACTION COMPLAINT

suffered damages as a result of Defendants' misconduct. Defendants' unlawful, unfair, and fraudulent business acts and practices continue through the date of this filing.

237.    The above-described unfair, unlawful and fraudulent business practices conducted by Defendants present a threat and likelihood of harm and deception to members of the Class and the public in that Defendants have systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

238.    Under the UCL, Plaintiffs and Class Members request that Defendants be enjoined from engaging in business practices that constitute a violation of the UCL and other acts prohibited by law. Plaintiffs and Class Members further request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided for in California Business and Professions Code section 17203 and for such other relief as set forth herein.

## COUNT II
**(Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. on behalf of Plaintiff Steven Poslof, the California Class and the Nationwide Class)**

239.    Plaintiffs incorporate by reference all material facts in this Complaint as though fully set forth herein.

240.    Plaintiff Steven Poslof brings this Count on behalf of himself and the California Class and the Nationwide Class.

241.    Defendants, each and individually, are a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and have provided "products" within the meaning of California Civil Code sections 1761(b) and 1770.

64
CLASS ACTION COMPLAINT

242.    Plaintiff Steven Poslof and members of the Class are "consumers" within the meaning of California Civil Code sections 1761(d) and 1770 and have engaged in a "transaction" within the meaning of California Civil Code sections 1761(e) and 1770.

243.    Defendants' acts and practices, which were intended to result and which did result in the use of the Alibaba.com e-commerce platform and purchase of products on Alibaba.com by Plaintiffs and Class Members, violate section 1770 of the Consumers Legal Remedies Act in that Defendants represented that their Trade Assurance Policy is a service that has characteristics, uses, or benefits which it does not have (Cal. Civ. Code § 1770(a)(5)).

244.    Specifically, Defendants represented that, among other things as alleged *supra,* their Trade Assurance Policy and Alibaba Guaranteed provided a 'money-back policy,' 'resolution support,' and 'compensation for any issues related to the purchase,' thereby representing that the service had characteristics and benefits (i.e., a reliable and enforceable right to refunds and compensation under specified conditions) which it does not actually have, because the provision of these benefits is subject to Alibaba's sole and unfettered discretion, rendering the promise of such benefits illusory.

245.    Defendants knew, should have known, or were reckless in not knowing that their Trade Assurance Policy and Alibaba Guaranteed as administered was a service that did not have the qualities and characteristics it represented, warranted, and advertised it to have and that, due to the discretionary nature of its administration by Alibaba, it was an illusory promise rather than a guaranteed service.

246.    Defendants engaged in these unfair and deceptive acts or practices with the intent that they result, and which did result, in the use of the Alibaba.com e-commerce platform and

purchase of products on Alibaba.com by Plaintiffs and Class Members.

247. Defendants' unfair and deceptive acts or practices occurred repeatedly in their course of trade or business, were material, and capable of deceiving a substantial portion of the purchasing public.

248. Defendants were under a duty to Plaintiffs and Class Members to disclose the deceptive nature of the administration of their Trade Assurance Policy and Alibaba Guaranteed because Plaintiffs and Class Members did not receive refunds or compensation for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed; Defendants were in a superior position to know and had exclusive knowledge of the administration of their Trade Assurance Policy and Alibaba Guaranteed; and Plaintiffs and Class Members could not reasonably have been expected to learn of, or discover, the unfair, dishonest, and unlawful manner in which Defendants administered their Trade Assurance Policy and Alibaba Guaranteed.

249. As described above, in connection with the marketing of the Alibaba.com e-commerce platform and Alibaba's Trade Assurance Policy and Alibaba Guaranteed to Plaintiffs and Class Members, Defendants actively concealed and failed to disclose material information despite having knowledge of the unfair, unjust, and unlawful manner that Defendants administered their Trade Assurance Policy and Alibaba Guaranteed as described herein, before Plaintiffs and Class Members purchased products on Alibaba.com. The fact that consumers were being denied refunds and compensation for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed is material because a reasonable person would have considered it an important factor in deciding whether to engage in e-commerce on Alibaba.com and complete transactions for product purchases on Alibaba.com. Plaintiffs would not have engaged in e-commerce on

66
CLASS ACTION COMPLAINT

Alibaba.com and purchased products on Alibaba.com if they had known of that fact.

250.    As a direct and proximate result of Defendants' violations of law, Plaintiff Steven Poslof and Class Members suffered injury in fact and lost money paid for products purchased on Alibaba.com when Defendants failed to administer their Trade Assurance Policy and Alibaba Guaranteed as intended and advertised.

251.    Plaintiffs seek an order enjoining Defendants from the unlawful practices described above and an Order requiring Defendants to notify the Class of their violations of the CLRA and the remedy it will provide to them.

### COUNT III

**(Violation of New York's General Business Law § 349, et seq. (Deceptive Acts and Practices) on behalf of Plaintiff Senad Djulamerovic and the New York Class**)

252.    Plaintiffs incorporate by reference all material facts in this Complaint as though fully set forth herein.

253.    Plaintiff Senad Djulamerovic brings this Count on behalf of himself and the New York Class.

254.    New York General Business Law § 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and Section 349(h) affords a private right of action to any person injured by reason of such a deceptive act or practice. To state a claim, a plaintiff must allege that the defendant engaged in consumer-oriented conduct that was materially misleading and that the plaintiff suffered injury as a result of the deceptive act or practice.

255.    Defendants' conduct as alleged herein constitutes consumer-oriented, materially misleading and deceptive acts in violation of NY Gen. Bus. § 349 et seq.

256.    In the course of business, Defendants knew and had notice the coverage provided to buyers by the Trade Assurance Policy and Alibaba Guaranteed is wholly illusory; the actual provision of its remedies is not the result of a ministerial, formulaic process that provides any sort of actual guarantee for buyers, but instead reflects policies that are capriciously applied, or not, in a manner that remains wholly within Alibaba's unfettered discretion.

257.    Defendants violated New York General Business Law § 349 by representing to buyers that the Trade Assurance Policy and Alibaba Guaranteed would protect buyers by providing refunds and compensation for issues related to delivery (e.g., not shipped, missing, etc.), product quality (e.g., defective, incorrect, damaged, etc.), and other agreed-upon terms related to the purchase of products on Alibaba.com.  These representations create the false and misleading impression of a binding commitment, when in practice, the decision to provide such refunds and compensation is reserved to Alibaba's sole and arbitrary discretion, rendering the purported protections and guarantees illusory.

258.    Plaintiff Senad Djulamerovic and the New York Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

259.    As a direct and proximate result of Defendants' violations of New York General Business Law § 349, Senad Djulamerovic and the New York Class Members have suffered injury-in-fact and/or actual damages.

**COUNT IV**

**(Violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq. on behalf of Plaintiff Peter Hunt and the Arizona Class)**

260.    Plaintiffs incorporate by reference all material facts in this Complaint as though fully set forth herein.

261.    Plaintiff Peter Hunt brings this Count on behalf of himself and the Arizona Class.

262.    Defendants are defined as "persons" because Defendant are "business entities" under Ariz. Rev. Stat. §§ 44-1521(6).

263.    Plaintiff's and the Arizona Class Members' purchases on Alibaba.com were "sales" as defined by the ACFA, Ariz. Rev. Stat. §§ 44-1521(7).

264.    The Arizona ACFA, Ariz. Rev. Stat. § 44-1522(A), provides that any "deceptive or unfair act" is "an unlawful practice":

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

265.    Defendants' conduct as alleged herein constitutes deceptive or unfair acts in violation of Ariz. Rev. Stat. § 44-1522(A).

266.    In the course of business, Defendants knew and had notice the coverage provided to buyers by the Trade Assurance Policy and Alibaba Guaranteed is wholly illusory; the actual provision of its remedies is not the result of a ministerial, formulaic process that provides any sort of actual guarantee for buyers, but instead reflects policies that are capriciously applied, or not, in a manner that remains wholly within Alibaba's unfettered discretion.

267.    Defendants violated the Arizona ACFA by representing to buyers that the Trade Assurance Policy and Alibaba Guaranteed would protect buyers by providing refunds and compensation for issues related to delivery (e.g., not shipped, missing, etc.), product quality (e.g., defective, incorrect, damaged, etc.), and other agreed-upon terms related to the purchase of products on Alibaba.com.  These representations create the false and misleading impression of a binding commitment, when in practice, the decision to provide such refunds and compensation is reserved to Alibaba's sole and arbitrary discretion, rendering the purported protections and guarantees illusory.

268.    Plaintiff Peter Hunt and the Arizona Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

269.    As a direct and proximate result of Defendants' violations of the Arizona ACFA, Peter Hunt and the Arizona Class Members have suffered injury-in-fact and/or actual damages.

## COUNT V
**(Violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, et seq. on behalf of Plaintiff Eugene Cobb and the Ohio Class)**

270.    Plaintiffs incorporate by reference all material facts in this Complaint as though fully set forth herein.

271.    Plaintiff Eugene Cobb brings this Count on behalf of himself and the Ohio Class.

272.    Plaintiff Eugene Cobb and the Ohio Class Members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("Ohio CSPA").

273.    Defendants are a "supplier" as defined by the Ohio CSPA.

70
CLASS ACTION COMPLAINT

274.   Plaintiff's and the Ohio Class Members' purchases on Alibaba.com were "consumer transactions" as defined by the Ohio CSPA.

275.   The Ohio CSPA, Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, and without limitation of the broad prohibition, § 1345.02(B)(10) prohibits suppliers from representing "[t]hat a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

276.   Defendants' conduct as alleged herein constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.

277.   In the course of business, Defendants knew and had notice the coverage provided to buyers by the Trade Assurance Policy and Alibaba Guaranteed is wholly illusory; the actual provision of its remedies is not the result of a ministerial, formulaic process that provides any sort of actual guarantee for consumers, but instead reflects policies that are capriciously applied, or not, in a manner that remains wholly within Alibaba's unfettered discretion.

278.   Defendants violated the Ohio CSPA by representing to consumers that the Trade Assurance Policy and Alibaba Guaranteed would protect consumers by providing refunds and compensation for issues related to delivery (e.g., not shipped, missing, etc.), product quality (e.g., defective, incorrect, damaged, etc.), and other agreed-upon terms related to the purchase of products on Alibaba.com.  These representations create the false and misleading impression of a binding commitment, when in practice, the decision to provide such refunds and compensation is reserved to Alibaba's sole and arbitrary discretion, rendering the purported protections and guarantees illusory.

279.   Plaintiff Eugene Cobb and the Ohio Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

280.   As a direct and proximate result of Defendants' violations of the Ohio CSPA, Plaintiff Eugene Cobb and the Ohio Class Members have suffered injury-in-fact and/or actual damages.

281.   Plaintiff Eugene Cobb and the Ohio Class Members also seek court costs and attorneys' fees as a result of Defendants' violations of the Ohio CSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT VI
**(Violation of Virginia's Consumer Protection Act, Va. Code § 59.1-196**, et seq. on behalf of Plaintiff Adnan Merdach and the Virginia Class)

282.   Plaintiffs incorporate by reference all material facts in this Complaint as though fully set forth herein.

283.   Plaintiff Adnan Merdach brings this Count on behalf of himself and the Virginia Class pursuant to the Virginia Consumer Protection Act, Va. Code § 59.1-196 ("Virginia CPA").

284.   Defendants are a "supplier" as defined by Va. Code § 59.1-198.

285.   Plaintiff Adnan Merdach and the Virginia Class Members are each "persons" under Va. Code § 59.1-198.

286.   Plaintiff Adnan Merdach's and the Virginia Class Members' purchases on Alibaba.com were "consumer transactions" under Va. Code § 59.1-198.4.

287.   The Virginia CPA, Va. Code § 59.1-196, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, and without limitation of the

broad prohibition, § 59.1-200(A)(14) prohibits suppliers from "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

288.    Defendants' conduct as alleged herein constitutes unfair and/or deceptive consumer sales practices in violation of the Virginia CPA.  In the course of business, Defendants knew the coverage provided to buyers by the Trade Assurance Policy and Alibaba Guaranteed is wholly illusory; the actual provision of its remedies is not the result of a ministerial, formulaic process that provides any sort of actual guarantee for consumers, but instead reflects policies that are capriciously applied, or not, in a manner that remains wholly within Alibaba's unfettered discretion.

289.    Defendants violated the Virginia CPA by representing to consumers that the Trade Assurance Policy and Alibaba Guaranteed would protect consumers by providing refunds and compensation for issues related to delivery (e.g., not shipped, missing, etc.), product quality (e.g., defective, incorrect, damaged, etc.), and other agreed-upon terms related to the purchase of products on Alibaba.com.  These representations create the false and misleading impression of a binding commitment, when in practice, the decision to provide such refunds and compensation is reserved to Alibaba's sole and arbitrary discretion, rendering the purported protections and guarantees illusory.

290.    Under the Virginia CPA, Defendants committed fraud by making 1) false representations that the Trade Assurance Policy and Alibaba Guaranteed would protect consumers by providing refunds and compensation; 2) these representations were material facts because Plaintiff Adnan Merdach and Class Members were aware of and relied upon Trade Assurance Policy and Alibaba Guaranteed to protect their purchases made on Alibaba.com and were

subsequently denied refunds and compensation; 3) Defendants made the false representations intentionally and knowingly; 4) the representations were made with the intent to mislead Plaintiff Adnan Merdach and Class Members to make purchases on Alibaba.com; 5) Plaintiff Adnan Merdach and Class Members relied on Trade Assurance Policy and Alibaba Guaranteed in making their purchases; and 6) Plaintiff Adnan Merdach and Class Members suffered loss.

291.    As a direct and proximate result of Defendants' violations of the Virginia CPA, Plaintiff Adnan Merdach and the Virginia Class Members have suffered injury-in-fact and/or actual damages.

292.    Plaintiff Adnan Merdach and the Virginia Class Members also seek court costs and attorneys' fees as a result of Defendants' violations of the Virginia CPA as provided in Va. Code § 59.1-204(B).

## COUNT VII
### (Unjust Enrichment on behalf of the Nationwide Class)

293.    Plaintiffs incorporate by reference all material facts in this Complaint as though fully set forth herein.

294.    Plaintiffs bring this Count on behalf of themselves and the Nationwide Class.

295.    Plaintiffs and Class Members conferred a benefit on Defendants by engaging in e-commerce on Alibaba.com and purchasing products on Alibaba.com.

296.    Defendants voluntarily accepted and retained the benefit conferred by Plaintiffs and Class Members in the form of 1) profits from selling products through their e-commerce platform and 2) through unjustly retaining the refunds and compensation which should have been paid to Plaintiffs and Class Members under the plain terms of the Trade Assurance Policy and Alibaba Guaranteed.

297. Defendants were unjustly enriched by marketing and collecting revenues from transactions made under the guise of their Trade Assurance Policy and Alibaba Guaranteed, which purported to offer buyers protections but were, in fact, illusory. Buyers, including Plaintiffs and the Class, paid for products and engaged with the Alibaba.com platform relying on this promised (but illusory) protection, and Defendants benefited from these transactions while failing to provide the consideration of actual, enforceable assurance. The benefit retained by Defendants includes not only profits from the transactions themselves but also the value of the funds they should have paid out in refunds and compensation had the Trade Assurance Policy and Alibaba Guaranteed been genuine, non-illusory commitments.

298. The benefits that Defendants received and retained are unjust, and inequity has resulted.

299. Defendants knowingly accepted the unjust benefits of their misconduct.

300. It is inequitable and unconscionable for Defendants to retain those unjust benefits without paying value to Plaintiffs and Class Members.

301. As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs and Class Members, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action pursuant to the proposed Class, as it may be modified or amended, and respectfully requests this Court:

A. Determine that the claims alleged herein may be maintained as a class action under

75
CLASS ACTION COMPLAINT

Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    Appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.    Award damages, including compensatory and punitive damages, to Plaintiffs and all other Class Members;

D.    Award Plaintiffs and Class Members actual damages sustained;

E.    Award Plaintiffs and Class Members such additional damages, over and above the amount of their actual damages, which are authorized and warranted by law;

F.    Grant restitution to Plaintiffs and Class Members and require Defendants to disgorge inequitable gains;

G.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to provide refunds and compensation for issues covered by the plain terms of the Trade Assurance Policy and Alibaba Guaranteed, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the unfair, dishonest, and unlawful administration of their Trade Assurance Policy and Alibaba Guaranteed;

H.    Award Plaintiffs and Class Members their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

I.    Award such other relief as this Court deems just and appropriate.

CLASS ACTION COMPLAINT

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 3, 2026

By:  /s/ *Beena M. McDonald*

Beena M. McDonald (CA Bar ID: 365776)
Kimberly M. Donaldson-Smith, *pro hac vice* forthcoming
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
P: (610) 642-8500
F: (610) 649-3633
*bmm@chimicles.com*
*kimdonaldsonsmsith@chimicles.com*

James Jonathan Rosemergy, *pro hac vice* forthcoming
**CAREY, DANIS & LOWE**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
P: 314-725-7700
F: 314-721-0905
*jrosemergy@careydanis.com*

Jacob A. Flint, *pro hac vice* forthcoming
jacob@jacobflintlaw.com
**JACOB FLINT LAW**
2 CityPlace Dr. #200
St. Louis, MO 63141
P: (314) 677-7613
*jacob@jacobflintlaw.com*

77
CLASS ACTION COMPLAINT

Louis A. Gonzalez, *pro hac vice* forthcoming
**VARGAS GONZALEZ DELOMBARD, LLC**
2745 West Fairbanks Ave.
Winter Park, FL 32789
P: (407) 603-7940
F: (407) 603-7943
*louis@vargasgonzalez.com*

*Attorneys for Plaintiffs and the Class*

CLASS ACTION COMPLAINT