WOMBLE BOND DICKINSON (US) LLP
Tomio B. Narita (SBN 156576)
Tomio.Narita@wbd-us.com
R. Travis Campbell (SBN 271580)
Travis.Campbell@wbd-us.com
Leanne C. Yu (SBN 290698)
Leanne.Yu@wbd-us.com
Michelle Catapang (SBN 308038)
Michelle.Catapang@wbd-us.com
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 433-1900

WOMBLE BOND DICKINSON (US) LLP
Genevieve Walser-Jolly (SBN 262784)
Genevieve.Walser-Jolly@wbd-us.com
Andrew Yu-Chih (SBN 326135)
Andrew.Yu-Chih@wbd-us.com
400 Spectrum Center Drive, Suite 1700
Irvine, CA 92618
Telephone: (714) 557-3800
Attorneys for Defendants *Alibaba Group (US) Inc., Alibaba.com US E-Commerce Corp., Alibaba.com US LLC, and Alibaba Group Holding Limited*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Eugene Cobb, Senad Djulamerovic, Peter Hunt, Adnan Merdach, and Steven Poslof, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALIBABA GROUP HOLDING LIMITED, ALIBABA.COM SINGAPORE ECOMMERCE PRIVATE LIMITED, ALIBABA GROUP (US) INC., ALIBABA.COM US LLC, ALIBABA.COM US E-COMMERCE CORP., and CAINIAO SMART LOGISTICS NETWORK LIMITED,<br><br>Defendants. | CASE NO.: 5:26-cv-05292-EJD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: Thursday, October 22, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, October 22, 2026, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4, 5th Floor, of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, before the Honorable Edward J. Davila, Defendants Alibaba Group (US) Inc., Alibaba.com US E-Commerce Corp., Alibaba.com US LLC, and Alibaba Group Holding Limited ("Defendants") will, and hereby do, move this Court for an order, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, dismissing the claims asserted in Plaintiffs' Class Action Complaint and striking improper injunctive-relief allegations.

The motion is made on the grounds that the Complaint fails to state a claim upon which relief can be granted as to any of the Defendants, and on the grounds that the claims for injunctive relief are factually and legally unsupported.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support, the accompanying Request for Judicial Notice ("RJN"), the records on the file in this action, and all other evidence or argument the Court may permit at the hearing of this matter.

DATED: August 31, 2026

WOMBLE BOND DICKINSON (US) LLP
TOMIO B. NARITA
GENEVIEVE WALSER-JOLLY
R. TRAVIS CAMPBELL
LEANNE C. YU
MICHELLE CATAPANG
ANDREW YU CHIH

By: s/Tomio B. Narita
Tomio B. Narita
Attorney for Defendants
*Alibaba Group (US) Inc., Alibaba.com US E-Commerce Corp., Alibaba.com US LLC, and Alibaba Group Holding Limited*

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. PLAINTIFFS' ALLEGATIONS ....... 3

A. The Complaint's Core Factual Allegations Directly Conflict With The Documents They Incorporate By Reference ....... 3

B. The "Trade Assurance" and "Alibaba Guaranteed" Programs ....... 4

1. Trade Assurance ....... 5

2. Alibaba Guaranteed ....... 7

C. The Named Plaintiffs' Claims ....... 7

D. The Causes of Action ....... 9

III. LEGAL STANDARD ....... 9

IV. ARGUMENT ....... 9

A. Plaintiffs' Purchases Were Not Covered by Trade Assurance or Alibaba Guaranteed ....... 9

B. The Trade Assurance Service Rules Foreclose Plaintiffs' Claims ....... 10

C. The Complaint Fails To Satisfy Rule 9(b)'s Heightened Pleading Requirements ....... 13

D. Plaintiffs Cannot Invoke Consumer Protection Statutes Because They Expressly Agreed To Use The Platform Only For Business Purposes ....... 15

E. Plaintiffs' Claims For Restitution Fail Because Plaintiffs Have An Adequate Remedy at Law ....... 17

F. Plaintiffs Failed To Adequately Allege An Unjust Enrichment Claim ....... 19

G. Plaintiffs Lack Standing To Seek Injunctive Relief ....... 20

H. Plaintiff Hunt's Claim Under Arizona's CFA Is Time-Barred ....... 21

V. CONCLUSION ....... 21

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S.678 (2009) ....................21

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024)....................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................9

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025)....................11

*Caracciolo v. Facebook, Inc.*,
167 F.Supp.3d 1056 (N.D. Cal. Mar. 7, 2016) ....................4

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................20

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018)....................20

*Gerlinger v. Amazon.com, Inc.,*
311 F.Supp.2d 838 (N.D. Cal. 2004)....................19

*Guzman v. Polaris Industries Inc.*,
49 F. 4th 1308 (9th Cir. 2022)....................18

*Heagney v. John Paul Mitchell Sys*.,
2023 U.S. Dist. LEXIS 134279 (N.D. Cal. Aug. 2, 2023) ....................20

*Horton v. Neostrata Co.*,
2016 U.S. Dist. LEXIS 197187 (S.D. Cal. Nov. 22, 2016)....................14

*In re Silicon Graphics, Inc. Sec. Litig*.,
183 F.3d 970 (9th Cir. 1999) ....................3

*Julian v. TTE Tech., Inc.*,
2020 U.S. Dist. LEXIS 215039 (N.D. Cal. Nov. 17, 2020) ....................18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 13, 14, 15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 3

*Klein v. Parker Univ.*,
2021 U.S. Dist. LEXIS 227949 (N.D. Cal. July 12, 2021) .......... 15, 17

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 4

*Lacano Inves., LLC v. Balash*,
765 F.3d 1068 (9th Cir. 2014) .......... 9

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988) .......... 12

*Marquez v. Adobe, Inc.*,
2026 U.S. Dist. LEXIS 70653 (N.D. Cal. Mar. 31, 2026) .......... 11

*Milenbach v. C.I.R.*,
318 F.3d 924 (9th Cir. 2003) .......... 12

*MOU v. SSC San Jose Operating Co*. LP,
415 F. Supp. 3d 918 (N.D. Cal. Nov. 22, 2019) .......... 14

*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*,
2020 U.S. Dist. LEXIS 28774 (D.N.J. Feb. 20, 2020) .......... 17

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .......... 4

*Phan v. Sargento Foods, Inc.*,
2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2, 2021) .......... 18

*Pirozzi v. Fiserv Corp.*,
668 F.Supp.3d 968 (C.D. Cal. Feb. 16, 2022) .......... 12

*Reilly v. Apple Inc.*,
2022 U.S. Dist. LEXIS 74790 (N.D. Cal. Apr. 25, 2022) .......... 15

*Sherman v. Premiergarage Sys., LLC*,
2011 U.S. Dist. LEXIS 172192 (D. Ariz. Apr. 26, 2011) .......... 16, 17

*Seif v. State Farm Mut. Auto Ins. Co.*,
2026 U.S. Dist. LEXIS 75391 (C.D. Cal. Mar. 31, 2026) .......... 18

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 18

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 4

*Staren v. Clarivate Analytics (US) LLC*,
2025 U.S. Dist. LEXIS 2439 (D. Ariz. Jan. 6, 2025) .......... 13

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 13

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 4

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) .......... 3

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 13

*Zepeda v. PayPal, Inc.*,
777 F. Supp. 2d 1215 (N.D. Cal. 2011) .......... 13, 14, 17, 19

**State Cases**

*Alaface v. Nat'l Inv. Co.*,
181 Ariz. 586 (Ct. App. 1994) .......... 21

*Cruz v. NYNEX Info. Resources*,
263 A.D.2d 285 (2000) .......... 16, 17

*Goldman v. Metro. Life Ins. Co.*,
5 N.Y.3d 561 (2005) .......... 19

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002) .......... 15

*Murry v. W. Am. Mortg. Co.*,
124 Ariz. 387 (Ct. App. 1979) .......... 21

*Neyrinck v. Hilton Truck & Equipment Co.*,
1987 Ohio App. LEXIS 9374 .......... 17

**Statutes**

Ariz. Rev. Stat. § 12-541(5) .......... 21

Ariz. Rev. Stat. §§ 44-1521 .......... 21

Cal. Civ. Code § 1760 .......... 15

Cal. Civ. Code § 1761(d) .......... 15

New York's General Business Law § 349 .......... 15

Ohio Rev. Code § 1345.01(A) .......... 15

Va. Code. Ann. § 59.1-198 .......... 16

**Rules**

Rule 12(b)(6) .......... 9

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) .......... 15

**STATEMENT OF ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))**

1. Whether Plaintiffs' claims must be dismissed because the Complaint's allegations, if true, establish Plaintiffs did not trigger benefits under the Trade Assurance program, and because they failed to allege facts showing they triggered the Alibaba Guaranteed program.

2. Whether Plaintiffs' claims are barred by the express terms of the governing program documents, incorporated by reference into the Complaint.

3. Whether Plaintiffs may pursue claims under California's Unfair Competition Law and Consumer Legal Remedies Act, New York's General Business Law § 349, Ohio's Consumer Sales Practices Act, Virginia's Consumer Protection Act, and Arizona's Consumer Fraud Act (statutes that only apply to transactions made for personal, family, or household purposes) where Plaintiffs have not alleged their purchases were for consumer purposes, and where users of the Alibaba.com platform who wish to invoke the Trade Assurance program expressly agree their purchases are made solely for business purposes.

4. Whether the Complaint must be dismissed for failure to satisfy Rule 9(b)'s heightened pleading standard.

5. Whether Plaintiffs' claims for restitution must be dismissed because Plaintiffs have an adequate remedy at law.

6. Whether Plaintiffs' unjust enrichment claim must be dismissed because it is grounded in contract, not quasi-contract, and because Plaintiffs failed to adequately allege they conferred a benefit on Defendants that Defendants unjustly retained.

7. Whether Plaintiffs' request for injunctive relief should be stricken because no named Plaintiff has alleged a real and immediate threat of future injury nor a desire to purchase through Alibaba.com again, and Plaintiffs therefore lack standing to seek prospective relief.

8. Whether Plaintiff Hunt's claim under the Arizona Consumer Fraud Act must be dismissed as time-barred under Arizona's one-year statute of limitations, since the Complaint's own allegations establish Hunt discovered the alleged injury on December 20, 2024, and this action was not filed until June 3, 2026—seventeen months later.

## I. INTRODUCTION

Plaintiffs have filed an ambitious seventy-eight-page, 301-paragraph complaint making sweeping fraud and false advertising allegations under the consumer protection statutes of California and four other states. They challenge two buyer-protection programs, claiming the programs are based on "fundamentally illusory" promises. But if the allegations in the Complaint are assumed true, the contractual protections Plaintiffs seek to invoke never applied to their purchases.

Trade Assurance is not an advertising slogan. It is a contract and it only applies to specific transactions. The Complaint links to the Trade Assurance Services Rules (at footnote 19), quotes from them at paragraph 49, and builds every claim upon them. By their express terms Trade Assurance's "Money-back policy" only extends protection to buyers whose payments flowed through Alibaba.com's escrow. Plaintiffs' purchases do not qualify. They concede in footnote 30 that "[n]one of the Plaintiffs nor the purported Class engaged in this type of agreement with the suppliers." That sentence and the incorporated documents bar the claims of Plaintiffs and the putative classes.

Even if Plaintiffs qualified for Trade Assurance protection (they do not), the Rules they sue on defeat their claims. The Trade Assurance Rules require the buyer and seller to "first negotiate to solve the dispute" before any claim could proceed – a condition precedent that four of the five Plaintiffs never allege they took. The Rules gave Defendant Alibaba.com Singapore E-Commerce Private Limited ("Alibaba Singapore") – which has not yet been served with the Complaint – **"the right to make an independent decision"** on transaction disputes, to be exercised in accordance with the Alibaba.com Transaction Dispute Rules, and they advised buyers when no refund would issue. And the Free Membership Agreement (that every Trade Assurance user must accept to invoke the program's protections) states, in capital letters, that each member "SHALL FULLY ASSUME THE RISKS" of purchase and sale transactions on the platform, including "UNSATISFACTORY QUALITY," "FAILURE TO MEET SPECIFICATIONS," "DEFECTIVE PRODUCTS," and "DELAY OR DEFAULT IN DELIVERY." These exact risks Plaintiffs agreed to assume are the ones they now ask this Court

to shift onto Defendants. A promise is not illusory just because it is conditional, and discretion cabined by written standards is not "unfettered" or a "whim."

The Defendants filing this motion are also the wrong parties and should not have been sued. Assuming the Complaint's allegations are true, then Alibaba Singapore is the entity that "sets the program's terms, receives and adjudicates buyer complaints, and determines refund eligibility." ECF 1 ¶ 25. The four Defendants who are filing this motion, Alibaba Group Holding Limited, Alibaba Group (US) Inc., Alibaba.com US, LLC, and Alibaba.com US E-Commerce Corp) are only alleged to have provided operational, marketing, and technology support for a platform that Alibaba Singapore alone administers.

Relatedly, the Complaint improperly lumps all the defendants together and makes vague allegations of fraud that do not even approach the strict pleading standards imposed by Rule 9(b). It never identifies a single representation any Plaintiff saw, when he saw it, which entity made it, or who denied his claim. Each Plaintiff pleads only that he "was aware of and relied upon the Trade Assurance Policy and/or Alibaba Guaranteed" — a formulaic recitation that identifies neither a statement nor a speaker. Lobbing these vague and undifferentiated allegations against a group of corporate affiliates is wholly insufficient.

The consumer protection statutes invoked by Plaintiffs only apply to transactions made for personal, family, or household purposes. Plaintiffs never claim their purchases were for a consumer purpose. Instead, they seek to invoke the rules of a business-to-business platform whose governing agreement states, in capital letters, that it is "INTENDED SOLELY FOR BUSINESS USE" and that any use for other purposes "IS UNDERTAKEN AT THE MEMBER'S SOLE RISK AND LIABILITY." Plaintiffs cannot assert a contractual right to a refund under the platform's Trade Assurance Rules and avoid the conditions that apply to access to those same services.

The remaining claims fail for independent reasons. Plaintiffs' claims for equitable restitution, including but not limited to under the UCL, fail because they have an adequate remedy at law—to sue for breach of contract. The unjust enrichment claims fail because Plaintiffs ground their entitlement in the program rules, meaning their claims sound in contract,

not quasi-contract. Also, their money was paid to third-party suppliers, not to Defendants, so there is no benefit for Defendants to return. No Plaintiff alleges any intention to purchase on Alibaba.com again, so none has standing to seek prospective injunctive relief. And Hunt's Arizona claim is untimely because he alleges discovery on December 20, 2024, the day the sauna arrived, and this action was not filed until June 3, 2026 — more than seventeen months after the one-year period began to run.

If everything alleged in the Complaint is ultimately proven true, then Plaintiffs may have valid claims against the overseas suppliers who sold them damaged goods or, in one instance, ran an outright scam. They have no valid claim against these Defendants. The Complaint should be dismissed with prejudice as to these four Defendants.

## II. PLAINTIFFS' ALLEGATIONS

### A. The Complaint's Core Factual Allegations Directly Conflict With The Documents They Incorporate By Reference

The theory of the Complaint is built almost entirely upon an eleven-year-old press release describing the Trade Assurance program and carefully selected excerpts and screenshots of webpages from Alibaba.com. But Plaintiffs' partial quotations from, and mischaracterization of, these documents run headlong into the incorporation by reference doctrine. When ruling on a motion to dismiss under Rule 12(b)(6) motion, this Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics, Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 1999). Considering such documents does not convert the motion into one for summary judgment. *Van Buskirk v. Cable News Network*, *Inc*., 284 F.3d 977, 980 (9th Cir. 2002).

Incorporation by reference is proper where, as here, a plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018). The doctrine exists to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of

those very documents that weaken — or doom — their claims." *Id.* An incorporated document may be treated "as part of the complaint," and the Court "may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The incorporation by reference doctrine reaches the terms of a program a plaintiff claims he participated in. *See Parrino v. FHP, Inc*., 146 F.3d 699 (9th Cir. 1998) (affirming consideration of documents describing terms of plaintiff's health plan where his claims depended on the conditions described in the documents). Moreover, the doctrine "applies with equal force to internet pages as it does to printed material," because "a computer user necessarily views web pages in the context of the links through which" they are reached. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) (allegedly defamatory caption from webpage had to be considered in context with other pages linked to it).

Ultimately, the court should not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Caracciolo v. Facebook, Inc*., 167 F.Supp.3d 1056, 1063 (N.D. Cal. Mar. 7, 2016) ("Plaintiff must accept the Terms of Service he incorporated into his pleading as a whole, not just those provisions that benefit his cause").

### B. The "Trade Assurance" and "Alibaba Guaranteed" Programs

"Alibaba.com" is a "global wholesale trading platform" where third party merchants sell their products to "small and medium-sized businesses" in the United States and around the world. ECF 1 ¶¶ 1, 55, fn. 24, RJN Ex. E [July 22, 2015 Press Release].

The Complaint challenges the "Trade Assurance" and "Alibaba Guaranteed" buyer protection programs offered for certain purchases made through Alibaba.com. ECF 1 ¶ 3. Plaintiffs claim Defendants made sweeping representations that these programs provided buyers "100% guarantee[d]" refunds for "any issues related to [their] purchase[s]" "as a matter of contractual obligation." *Id*. ¶¶ 6, 101. But the actual descriptions of the programs—hyperlinked in footnotes in the Complaint and thus incorporated by reference—show buyers were clearly informed of the qualified nature of the protections conferred under the programs.

1. Trade Assurance

Trade Assurance is a "no cost" "set of protection services" that "offer[s] secure and easy ways to pay, and protect[s] [buyers] against unforeseen circumstances such as product quality issues, shipping delays, and more." ECF 1 ¶ 61, fn. 29, RJN Ex. C [Trade Assurance Guide], p. 75.[1] The program is "designed to give ***businesses*** peace of mind when buying from overseas suppliers." *Id.* ¶ 55, fn. 24, RJN Ex. E [July 22, 2015 Press Release], pp. 117-118 (emphasis added).

The terms of the Trade Assurance program are set forth in the applicable version of the "Trade Assurance Services Rules," one version of which is hyperlinked in Footnote 19 of the Complaint. *Id.* ¶ 49, fn. 19; *see* RJN Exhs. A & B. Buyers who make purchases under the program must agree to those rules. *See* RJN Ex. A [Trade Assurance Services Rules] at p. 10 (**"Use of the Trade Assurance Services shall mean that such user has agreed to and abided by the relevant service agreements and all other relevant rules in Alibaba.com"**) (emphasis in original). Trade Assurance **only** operates within a specific framework (which is depicted in a simple illustration from the Trade Assurance Guide that Plaintiffs omit) where buyers' payments are held in escrow and "released to the supplier after the order is received and confirmed." *Id.* ¶ 61, fn. 29, RJN Ex. C [Trade Assurance Guide] at p. 76.




[1] All exhibit page number references refer to the page numbers found at the bottom right corner of the documents attached to Defendants' Request for Judicial Notice.

If an escrow was opened and there is an issue with the purchase, the buyer "shall first negotiate [with the seller] to solve the dispute." ECF 1 ¶ 49, fn. 19, RJN Ex. A [Trade Assurance Services Rules], p. 17 § 9.1.3; RJN Ex. B, p. 62 § 8.1.3 (same). If the buyer and seller are unable to reach a resolution, then the buyer may submit a claim through Trade Assurance to allow ***Alibaba Singapore*** to "mediate" the dispute and determine whether the buyer is entitled to a refund.[2] RJN Ex. A, pp. 33-34, §§ 9.1 – 9.6; RJN Ex. B, p. 62 §§ 8.1 – 8.6.

The rules further state that **"Alibaba Singapore has the right to make an independent decision [] on any disputes related to the Purchase Contract," "in accordance with Alibaba.com Transaction Dispute Rules."** RJN Ex. A, pp. 34-35, §§ 10.1, 10.2; RJN Ex. B, p. 62, §§ 9.1, 9.2 (emphasis in original). Under the applicable rules, Alibaba Singapore may deny refund requests in certain situations. RJN Ex. A, pp. 35-36 § 11, RJN Ex. B, p. 63 § 10.

Trade Assurance is not available for all purchases made through the Alibaba.com platform. Rather, it applies only to purchases made from "qualified Alibaba.com suppliers." ECF 1 ¶¶ 55, fn. 24, RJN Ex. E [July 22, 2015 Press Release] p. 117; *see also* RJN Ex. C [Trade Assurance Guide] at p. 84 ("How to find Trade Assurance suppliers").

Finally, and importantly, Trade Assurance protections are available only to **"qualifying registered users who had duly agreed to all terms of the Alibaba.com Free Membership Agreement."** *See* RJN Ex. A at p. 10 & Ex. B at p. 57 (emphasis in original). Thus, assuming for purposes of argument that Plaintiffs are buyers who made purchases covered by Trade Assurance, they also agreed to the terms of Alibaba.com's "Free Membership Agreement" ("FMA"). Those terms include limitation-of-liability provisions and restrictions limiting use of the Alibaba.com platform to "business use." *See* Sections IV.B and IV.D, *infra*.

---

[2] Alibaba Singapore is the only defendant who is a party to the Trade Assurance Services Rules. ECF 1 ¶ 49, fn. 19, RJN Ex. A [Trade Assurance Services Rules], p. 10 § 1.2; Ex. B. p. 50 § 1.2.

2. <u>Alibaba Guaranteed</u>

The Alibaba Guaranteed program is designed to provide "small and medium-sized enterprises (SMEs) in the U.S." added "order protection," including guaranteed delivery and "money back for order issues." ECF 1 ¶ 56, fn. 25, RJN Ex. F [June 6, 2024 Press Release] pp. 120-121. Like Trade Assurance, Alibaba Guaranteed is available only for certain purchases (i.e. those advertised with the "Guaranteed" logo). *See* RJN ¶ 7; ECF 1 ¶ 57 (screenshot).







**C. The Named Plaintiffs' Claims**

Plaintiffs allegedly purchased different products from various third-party suppliers through Alibaba.com, and the products were damaged, had quality issues, or were not delivered

at all. ECF 1 ¶¶ 109, 113, 122, 129, 145, 151, 167, 176, 184, 187. Plaintiffs allege in conclusory fashion that their purchases "triggered" benefits under Trade Assurance and Alibaba Guaranteed, yet they apparently deny—in footnote 30—that Alibaba.com held their payments in escrow, as required under Trade Assurance's Money-back policy. See *Id*. ¶ 61, fn. 30; *see also* RJN Ex. C [Trade Assurance Guide] at p. 76 (Trade Assurance involves Alibaba.com holding payments in escrow). Moreover, Plaintiffs **do not** allege that they purchased from qualified Alibaba Guaranteed suppliers or that they sought refunds or other compensation under the Alibaba Guaranteed program.

Plaintiffs never allege they attempted to resolve their disputes directly with their suppliers. Instead, they submitted "claims" for refunds to Alibaba.com through the Trade Assurance program. ECF 1 ¶¶ 114-119; 131-142; 152-164; 177-181; 189-192. They claim "Alibaba" (i.e. all Defendants) "failed to provide refunds and compensation for issues explicitly covered by the terms of [] the Alibaba Trade Assurance Policy," but Plaintiffs never identify specific terms of that policy that purportedly entitled them to refunds. *Id*. ¶ 9. Plaintiffs say the Defendants improperly exercised discretion in denying their refund requests as opposed to granting them refunds "as a matter of contractual right." *Id*. ¶¶ 223, 244.

The Complaint contends the Defendants "intentionally" misrepresented the benefits of Trade Assurance and Alibaba Guaranteed despite knowing they would not provide refunds or compensation. *Id*. ¶¶ 72, 98, 199. Plaintiffs say representations were allegedly made through Alibaba.com and "other public facing advertisements, guides and press releases," but they never identify any specific representation they saw or relied upon. *Id*. ¶ 101. Notably, Plaintiffs do <u>not</u> allege Defendants always deny refunds; only that <u>their</u> particular claims were denied.

Although Plaintiffs contend **Alibaba Singapore** is the entity that "adjudicates buyer complaints" and "determines refund eligibility," they allege in conclusory fashion that all six "Defendants" caused their damages because Defendants "operate[d] as a single, integrated enterprise and as agents and alter egos of one another." *Id*. ¶¶ 25, 40.

//

//

### D. The Causes of Action

The Complaint asserts seven counts against all Defendants. The first six fall under the consumer protection statutes of California (Counts I and II), New York (Count III), Arizona (Count IV), Ohio (Count V), and Virginia (Count VI). *Id.* ¶¶ 220-292. The seventh cause of action is for unjust enrichment. *Id.* ¶¶ 293-301. Plaintiffs seek to certify a nationwide class as well as subclasses for each of the five states. *Id.* ¶ 206. Plaintiffs seek sweeping relief including but not limited to compensatory and punitive damages, restitution, and injunctive relief. *Id.*, Prayer for Relief.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. Although courts must assume the truth of *factual* allegations on a motion to dismiss, courts "do not accept *legal conclusions* in the complaint as true, even if cast in the form of factual allegations." *Lacano Inves., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014).

## IV. ARGUMENT

### A. Plaintiffs' Purchases Were Not Covered by Trade Assurance or Alibaba Guaranteed

Plaintiffs apparently deny (in footnote 30 of the Complaint) that their payments flowed through the escrow arrangement that Trade Assurance's money-back policy is built on. Because the documents incorporated by reference in the Complaint reflect that the escrow is the required mechanism of the Trade Assurance program, not an optional one, Plaintiffs have pleaded themselves out of the very program under which they were allegedly denied benefits. Their claims fail.

The Trade Assurance Guide—hyperlinked at footnote 29 of the Complaint —states that Alibaba.com holds in escrow any payments made under the program until the buyer confirms receipt of the product. *Id.* ¶ 61, fn. 29, RJN Ex. C [Trade Assurance Guide] at p. 76. Buyers cannot sidestep the escrow feature and still obtain coverage under Trade Assurance.

Plaintiffs do not allege that Alibaba.com held their payments in escrow, as required under the Trade Assurance Guide. In fact, in footnote 30 of the Complaint, they apparently deny that their payments went through escrow. *Id.*, ¶ 61, fn. 30. This is simple. Plaintiffs never "triggered" Trade Assurance's Money-back policy by their own allegations and incorporated documents, and thus they cannot sue for denial of refunds under the program.

Plaintiffs' Alibaba Guaranteed claims fail for the same reason. First, none of the Plaintiffs allege that they submitted claims under the Alibaba Guaranteed program. Nor can they. The Alibaba Guaranteed program applies only to certain purchases, i.e. those advertised with the "Guaranteed" logo. *See* RJN ¶ 7. But Plaintiffs did not allege they purchased products advertised with the Alibaba Guaranteed logo or other *facts* that would suggest their purchases qualified under the program. Again, Plaintiffs cannot sue for denial of benefits when their own allegations and the very documents they incorporate by reference establish they were not entitled to receive those benefits. These claims must be dismissed with prejudice.

### B. The Trade Assurance Service Rules Foreclose Plaintiffs' Claims

Even if Plaintiffs could bring their purchases within the Trade Assurance program (they cannot), the Trade Assurance Services Rules they incorporate by reference defeat their claims. Those rules show Alibaba.com offered a conditional dispute-resolution process, not the sweeping 100% refund guarantee Plaintiffs describe in their Complaint. Each of the claims fail for this independent reason.

The Trade Assurance Services Rules state prominently, in bold text, that **"Use of the Trade Assurance Services shall mean that such user has agreed to and abided by the relevant service agreements and all other relevant rules in Alibaba.com."** ECF 1 ¶ 49, fn. 19, RJN Ex. A [Trade Assurance Services Rules] at p. 10. Plaintiffs not only accepted these terms, but they expressly rely on them to support their claims. *Id.*

Four of the five Plaintiffs (Poslof, Djulamerovic, Cobb, and Merdach) fail a threshold requirement of the Trade Assurance Services Rules, i.e., that "[t]he complainant and the respondent shall first negotiate to solve the dispute" before a claim could proceed. *Id.* p. 10 § 9.1.3. None of these four Plaintiffs allege they attempted to negotiate with the seller before

submitting their Trade Assurance claims. That failure is fatal. Plaintiffs cannot bypass a contractual condition precedent to relief and then sue because relief was denied. *See Marquez v. Adobe, Inc*., 2026 U.S. Dist. LEXIS 70653, at **18-19 (N.D. Cal. Mar. 31, 2026) (dismissing claims for failure to allege satisfaction of condition precedent in Terms of Use).

Moreover, all the Plaintiffs' claims fail because the Trade Assurance program never promised what Plaintiffs say it did. Although the Complaint tries to plead around the actual program terms with cherry-picked screenshots from the Alibaba.com website, the incorporated Trade Assurance Services Rules—the very document the Complaint relies upon—promised a structured dispute-review process, not an automatic refund. Under the heading "**Dispute Determination**," the Rules told buyers exactly what they were getting: Alibaba Singapore **"has the right to make an independent decision"** on refund eligibility **"in accordance with [the program's rules]."** ECF 1 ¶ 49, fn. 19, RJN Ex. A [Trade Assurance Services Rules] pp. 17-18 § 10.2 (emphasis in original). A claim premised on an unconditional guarantee cannot stand where the governing terms created no such guarantee. *See, e.g., Bodenburg v. Apple Inc.*, 146 F.4th 761, 770 (9th Cir. 2025) (affirming dismissal where challenged representations were qualified by user agreement terms); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 902 (N.D. Cal. 2024) (UCL claim dismissed where advertising promise was qualified by contract terms).

Likewise, the FMA—which Plaintiffs had to accept before invoking Trade Assurance—contains multiple disclaimers that foreclose any claim of misrepresentation founded on an

allegedly open-ended "money-back guarantee."[3] For example, Section 4.3 of the FMA provides users "**SHALL FULLY ASSUME THE RISKS OF CONDUCTING ANY PURCHASE AND SALE TRANSACTIONS**" on Alibaba.com, including unsatisfactory quality, failure to meet specifications, defective products, delayed or defaulted delivery or payment, cost miscalculations, breach of warranty, and breach of contract. RJN Ex. D [FMA], p. 109 § 4.3 (emphasis in original). Those "fully assumed" risks are the ones Plaintiffs now seek to shift to Defendants here. *See* ECF 1 ¶¶ 109-19 (alleging defective and damaged sinks), 122-42 (alleging missing solar-system components), 145-64 (alleging damaged and misrepresented sauna), 167-81 (alleging seller non delivery of vehicle), 184-92 (alleging damaged and unusable energy-storage cells). Having agreed that they bear those transaction risks, Plaintiffs cannot convert their disputes with the sellers into platform-wide statutory liability against Defendants. *See* RJN Ex. D [FMA], p. 109 § 4.3.

Finally, Plaintiffs' illusory-promise theory fares no better. A contract is not illusory simply because performance depends on one party's judgment or discretion, so long as that discretion is exercised in good faith and according to objective standards. *See Milenbach v. C.I.R.*, 318 F.3d 924, 930 (9th Cir. 2003). The Trade Assurance Rules supply precisely those constraints: Article 9.2 requires decisions "in accordance with the Alibaba.com Transaction Dispute Rules," while Article 10 enumerates a number of grounds for denial. That is a rule-

---

[3] Although the contracting "Alibaba" entity under both the Trade Assurance Services Rules and the FMA is Alibaba Singapore, the FMA expressly extends to Alibaba Singapore's "agents." *See* RJN Ex. A [Trade Assurance Services Rules] p. 10, § 1.2; RJN Ex. D [FMA] pp. 104, 109-110, 18 §§ 1.1(b), 4.3. Thus, assuming the truth of Plaintiffs' agency allegations, each Defendant is entitled to enforce the terms of the FMA. *See Pirozzi v. Fiserv Corp*. 668 F.Supp.3d 968, 974 (C.D. Cal. Feb. 16, 2022) (citing *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988)) ("A non-signatory defendant may enforce a forum selection clause when 'the alleged conduct of the [non-signatory defendant] is closely related to the contractual relationship'.")

bound adjudication, not the unfettered whim described in the Complaint. Plaintiffs do not allege Alibaba Singapore acted in bad faith, only that it exercised the very contractual discretion the Rules reserved to it. That does not make the promise illusory. Alibaba.com did precisely what it said it would do—determine refund eligibility. *See Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1219–20 (N.D. Cal. 2011) (dismissing breach of contract claim because user agreement expressly gave PayPal "sole discretion" to place account holds); *Staren v. Clarivate Analytics (US) LLC*, 2025 U.S. Dist. LEXIS 2439, at *15–17 (D. Ariz. Jan. 6, 2025) ("sole discretion" provision not illusory).

At bottom, Plaintiffs are asking this Court to impose liability for the denial of a guarantee they did not qualify for and that was never promised under the very documents they sue upon. Their claims must be dismissed.

**C. The Complaint Fails To Satisfy Rule 9(b)'s Heightened Pleading Requirements**

Plaintiffs allege Alibaba Singapore—which they have not yet served—contracted with U.S. buyers and adjudicated refund claims. But Plaintiffs never explain what the four appearing Defendants did to any Plaintiff. They attribute representations generally to "Alibaba" or "Defendants," without identifying which statement any Plaintiff saw or relied on, which defendant made it, or who reviewed or denied any refund request. They also plead no facts supporting intentional or willful misconduct. Those deficiencies are fatal to the Complaint under Rule 9(b).

Because the entire Complaint rests on a unified theory of knowing misrepresentations, Rule 9(b)'s heightened pleading standard applies. *See* ECF 1 ¶¶ 98, 199; *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). That standard demands the "who, what, when, where, and how" of the alleged fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The Complaint falls far short of this standard.

First, Plaintiffs improperly lump the defendants together without pleading each Defendant's role in the alleged fraud. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). They allege **Alibaba Singapore**—not the four appearing Defendants— "sets the

program's terms, receives and adjudicates buyer complaints, and determines refund eligibility." ECF 1 ¶ 25. Having assigned the challenged conduct to Alibaba Singapore, Plaintiffs cannot sue the other defendants without alleging what each did to cause Plaintiffs' damages. Nor do they plead facts which, if proven true, would establish any Defendant controlled one another or that the entities were alter egos of each other. *See MOU v. SSC San Jose Operating Co*. LP, 415 F. Supp. 3d 918, 930-32 (N.D. Cal. Nov. 22, 2019) (generalized allegation that "all Defendants violated the law" was insufficient in view of allegation that one defendant made the determination to discharge plaintiff). At most, Plaintiffs appear to have sued the appearing Defendants because they share the "Alibaba" name. That is not enough. *See Horton v. Neostrata Co.*, 2016 U.S. Dist. LEXIS 197187, at **9–11 (S.D. Cal. Nov. 22, 2016) (rejecting group pleading for failure to adequately allege alter ego).

Plaintiffs also fail to plead reliance with particularity. They do not identify which statement any Plaintiff saw, when or where he saw it, which Defendant made it, or how it affected his purchase. Instead, each Plaintiff offers the same boilerplate allegation that he "was aware of and relied upon Trade Assurance Policy and/or Alibaba Guaranteed." ECF 1 ¶¶ 111, 125, 149, 169, 186. Boilerplate does not cut it. *See e.g.*, *Kearns*, 567 F.3d at 1126 (affirming dismissal where plaintiff failed to identify the specific advertisements seen, when they were seen, or which statements influenced the purchase); *Zepeda*, 777 F.Supp.2d at 1223 (dismissing UCL claim because although plaintiffs "refer to phrases plucked from PayPal's website," they "do not state when they were exposed to PayPal's allegedly deceitful advertisements and misrepresentations or which statements they consider material").

The scienter allegations also fail. Rule 9(b) requires facts—not conclusions—supporting a strong inference of fraudulent intent. Plaintiffs allege only that Defendants "knew" or "should have known" the programs were illusory, ECF 1 ¶¶ 98–100, 199, 266, 288, without identifying which Defendant knew what, when it learned it, or what policy or practice made any specific statement knowingly false when made. A recitation of facts concerning five denied claims involving different products, different suppliers, different time periods and different evidentiary records do not plausibly show any Defendant launched Trade Assurance to deceive buyers. At

most, they show that some claims were denied—an outcome the program rules expressly allow. *Kearns*, 567 F.3d at 1124

**D. Plaintiffs Cannot Invoke Consumer Protection Statutes Because They Expressly Agreed To Use The Platform Only For Business Purposes**

Plaintiffs' consumer protection claims fail for an additional reason: every statute they invoke — California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"), New York's General Business Law § 349 ("GBL § 349"), Ohio's Consumer Sales Practices Act ("CSPA"), Virginia's Consumer Protection Act ("CPA"), and Arizona's Consumer Fraud Act ("CFA") — applies only to transactions made **for personal, family, or household purposes**. Plaintiffs' transactions were made through a platform they contractually agreed was for business use only. Thus, either Plaintiffs' transactions are not covered under the Trade Assurance or Alibaba Guaranteed programs they invoke (Section IV.A, *supra*) or, if they are covered, the Plaintiffs' business to business transactions fall outside the consumer protection statutes on which Plaintiffs rely. Either way, the claims fail.

California's CLRA and UCL are designed to "protect consumers against unfair and deceptive business practices." Cal. Civ. Code § 1760; *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 949 (2002) (describing the UCL's purpose). The CLRA expressly defines a "consumer" as a person who acquires "goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Indeed, Black's Law Dictionary similarly defines "consumer" as "[s]omeone who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes." Black's Law Dictionary (11th ed. 2019). Thus, a plaintiff who made a purchase other than for "personal, family, or household" use lacks standing to assert claims under the UCL and CLRA. *See Klein v. Parker Univ*., 2021 U.S. Dist. LEXIS 227949, at *3 (N.D. Cal. July 12, 2021); *Reilly v. Apple Inc.*, 2022 U.S. Dist. LEXIS 74790, at **20-21 (N.D. Cal. Apr. 25, 2022) (applying the CLRA definition of "consumer" to UCL claim).

The same is true under the other states' statutes. *See e.g.*, Ohio Rev. Code § 1345.01(A) (Under Ohio CSPA, a "consumer transaction" must be "primarily [for] personal, family, or

household" purposes)); Va. Code. Ann. § 59.1-198 (Under Virginia's CPA, "consumer transaction" means "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes"); *Cruz v. NYNEX Info. Resources*, 263 A.D.2d 285, 289 (2000) ("In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes'"); *Sherman v. Premiergarage Sys., LLC*, 2011 U.S. Dist. LEXIS 172192, at **4-5 (D. Ariz. Apr. 26, 2011) (applying dictionary definition of "consumer" as "a person who buys goods or services for personal, family, or household use, with no intention of resale" to CFA claim).

The conclusory assertions that Plaintiffs are "consumers" within the meaning of the various state consumer protection statutes are factually unsupported. But if assumed true, then Plaintiffs cannot invoke the protections of the Trade Assurance Rules where all users have expressly agreed to use Alibaba.com's services solely for business use. The governing FMA—incorporated by reference in the Complaint—could not be clearer: the platform is limited to business use, and non-business users may not access or use it. The FMA states, in all caps:

> …**THE SERVICES/SITES ARE INTENDED SOLELY FOR BUSINESS USE, AND THAT END USERS WHO ARE NOT MAKING BUSINESS USE MAY NOT ACCESS OR USE THE SERVICES/SITES. BY ACCESSING OR USING ALIBABA.COM SITES/SERVICES, MEMBER ACKNOWLEDGES AND AGREES THAT THE ALIBABA.COM SITES/SERVICES ARE INTENDED SOLELY FOR BUSINESS USE AND THAT ANY USE OR ACCESS OTHER THAN FOR BUSINESS PURPOSES IS UNDERTAKEN AT THE MEMBER'S SOLE RISK AND LIABILITY**.

*See* RJN. Ex. D [FMA] at p. 104, introductory paragraph (emphasis added). This is not buried in fine print—it is a capitalized, express acknowledgment that the Alibaba.com platform is limited to business use and that non-business use is prohibited. Plaintiffs say Alibaba.com "permits" or "invites" purchases by individual consumers. But even accepting that as true, it does not change the dispositive point: each Plaintiff (if he is covered by the Trade Assurance Rules) represented that his transaction was for business purposes and proceeded on the platform at his own risk. Plaintiffs cannot now recharacterize those same transactions as "consumer"

purchases in order to manufacture consumer-protection claims. *See Zepeda*, 777 F.Supp.2d at 1222 (sellers on e-commerce platform cannot claim "consumer" status under the CLRA where they attested per the terms of the operative user agreement not to use their accounts "primarily for personal, family, or household purposes".)

*Zepeda* is directly on point. Plaintiffs alleged PayPal violated the CLRA by "omitting information on its website about the 'high likelihood of a hold being placed on a user's account' and by making statements on its website that 'were intended to deceive Plaintiffs'." *Zepeda*, 777 F.Supp.2d at 1222. A provision in the operative PayPal user agreement required plaintiffs to "attest that [they] are *not* establishing [their accounts] primarily for personal, family, or household purposes." *Id*. In view of that provision, the court found plaintiffs were not "consumers" under the statute and dismissed the CLRA claim. *Id*. Here, too, because Plaintiffs' use of the Alibaba.com platform meant they agreed to the FMA's "business use" limitation, they could not also be "consumers" for purposes of the statutes at issue.[4]

Because Plaintiffs cannot invoke the Trade Assurance Rules and then simultaneously establish the transactions at issue were for "personal, family, or household" use, their consumer protections claims must be dismissed. *See e.g*., *Klein*, 2021 U.S. Dist. LEXIS 227949, at *3 (N.D. Cal. July 12, 2021); *Cruz*, 263 A.D.2d at 289-90; *Neyrinck v. Hilton Truck & Equipment Co*., 1987 Ohio App. LEXIS 9374, at *10; *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2020 U.S. Dist. LEXIS 28774, at **30-31 (D.N.J. Feb. 20, 2020); *Sherman*, 2011 U.S. Dist. LEXIS 172192, at **4-5.

### E. Plaintiffs' Claims For Restitution Fail Because Plaintiffs Have An Adequate Remedy at Law

To the extent Plaintiffs seek restitution, including but not limited to under Counts I (UCL), II (CLRA), and VII (Unjust Enrichment), the claims fail. Plaintiffs' theory rests on an

---

[4] The *Zepeda* court found that the challenged conduct related to plaintiffs' activities as sellers, not purchasers. However, that point is immaterial to this Court's analysis because, per the terms of the FMA, any use of the Alibaba.com platform must be "solely for business use."

alleged contractual right to refunds, which—if it were viable (it is not)—would support a legal, not equitable remedy. Plaintiffs cannot repackage a contract claim into claims for equitable monetary relief they could not otherwise obtain.

To recover equitable remedies in federal courts, a plaintiff must establish he lacks an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). That principle applies with equal force even when the underlying equitable relief is sought under state laws that do not require a plaintiff to show that legal remedies are inadequate. *Id*. Accordingly, courts have dismissed UCL, CLRA, and unjust enrichment claims seeking monetary equitable relief where the plaintiff's proper remedy lies in breach of contract. *See e.g., Seif v. State Farm Mut. Auto Ins. Co.,* 2026 U.S. Dist. LEXIS 75391, at ** 6-7 (C.D. Cal. Mar. 31, 2026); *Phan v. Sargento Foods, Inc*., 2021 U.S. Dist. LEXIS 103629, at **14-16 (N.D. Cal. June 2, 2021); *Julian v. TTE Tech., Inc*., 2020 U.S. Dist. LEXIS 215039, at **9-12 (N.D. Cal. Nov. 17, 2020).

The Court should do the same here. The gravamen of Plaintiffs' claims is that the Trade Assurance and Alibaba Guaranteed programs constitute "binding" "contractual obligation[s]" to provide refunds and compensation for product issues, and that Alibaba.com failed to honor those commitments. ECF 1 ¶¶ 6, 101. That is a breach of contract claim. Plaintiffs' alleged damages — the value of undelivered, defective, or nonconforming goods for which Alibaba refused to refund — are recoverable as contract damages. Indeed, Plaintiffs do not even allege they lack an adequate remedy at law. Thus, Plaintiffs' claims for monetary equitable relief must be dismissed. *See Sonner*, 971 F.3d at 844; *Julian*, 2020 U.S. Dist. LEXIS 215039, at **9-12.

The fact that Plaintiffs have not separately asserted breach of contract claims changes nothing. Indeed, courts have dismissed UCL claims seeking equitable relief even where plaintiff cannot prevail on their legal cause of action. *See Guzman v. Polaris Industries Inc.*, 49 F. 4th 1308, 1312-13 (9th Cir. 2022) (affirming dismissal of UCL claim because the plaintiff had an adequate legal remedy under the CLRA, even though the CLRA claim itself was time-barred). Plaintiffs should not be permitted to seek equitable relief simply because they chose not to sue under the contracts they say apply. The Court should dismiss Plaintiffs' prayer for monetary

equitable relief, including but not limited to under Counts I, II and VII, without prejudice.[5]

**F. Plaintiffs Failed To Adequately Allege An Unjust Enrichment Claim**

As discussed above, Plaintiffs' theory—that Defendants owe refunds under the programs' "plain terms"—sounds in contract, not quasi-contract. Unjust enrichment is available only when no contractual relationship governs the parties' dispute.[6] *Zepeda*, 777 F. Supp. 2d at 1223 (applying California law). But Plaintiffs' allegations presume a valid contract exists between Plaintiffs and Alibaba Singapore: the Trade Assurance Services Rules and the incorporated FMA. *See* ECF 1, ¶ 49. They cannot invoke those rules as the source of Defendants' alleged refund obligation while disavowing the terms of the contract. Because the claim is, in substance, one for breach of contract, the unjust enrichment claim fails as a matter of law. *Zepeda*, 777 F. Supp. 2d at 1223.

*Zepeda* is again directly on point. Plaintiffs alleged that PayPal "placed holds on their accounts" and that as a result they were unable to access their money in their PayPal accounts. *Id*. at 1218. They alleged that PayPal was "unjustly enriched through its retention of the interest that accrued on Plaintiffs' suspended accounts." *Id*. at 1223. However, the court dismissed the claim because it found that "PayPal's user agreement" was "a valid express contract" between the parties that "cover[ed] the subject matter at issue." *Id*. (citing *Gerlinger v. Amazon.com, Inc.,* 311 F.Supp.2d 838, 856 (N.D. Cal. 2004) ("An action based on quasi-contract cannot lie where a valid express contract covering *the same subject matter* exists between the parties")). Here, like the PayPal user agreement in *Zepeda*, the Trade Assurance Services Rules and Alibaba Guaranteed cover the exact subject matter of Plaintiffs' claims, and thus Plaintiffs' claims—to the extent they exist at all—lie in an action for breach of those agreements, not

---

[5] At a minimum, the Court must dismiss Plaintiff Poslof's claims for monetary equitable relief under the UCL to the extent he seeks damages under the CLRA.

[6] The same is true under the other state's laws. *See e.g., Goldman v. Metro. Life Ins. Co*., 5 N.Y.3d 561, 572 (2005) (dismissing unjust enrichment claim under New York law because "[t]he theory of unjust enrichment lies as a quasi-contract claim").

unjust enrichment against six separate defendants.

Independent of this, the unjust-enrichment claim fails because Plaintiffs do not plead an element required under their respective states' laws: i.e., that Plaintiffs conferred a benefit on Defendants that Defendants unjustly retained. Plaintiffs used the Alibaba.com platform, but they bought from third-party suppliers—not Defendants—and Plaintiffs do not contend their payments passed through Alibaba.com's escrow. ECF 1 ¶ 61, fn. 30. Because Defendants never received Plaintiffs' money, there is no benefit to trace and no refund that Defendants could have "unjustly retain[ed]." The claim therefore fails.

### G. Plaintiffs Lack Standing To Seek Injunctive Relief

Plaintiffs seek an injunction requiring Defendants to provide refunds or compensation under Trade Assurance and Alibaba Guaranteed or, alternatively, to issue corrective notice about how those programs are administered. ECF 1., Prayer for Relief ¶ G. But prospective injunctive relief requires a "real and immediate" threat of future injury and a sufficient likelihood that plaintiff will be wronged again in the same way. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983). In the consumer context, a plaintiff must plausibly allege either a desire to purchase again or an inability to determine whether the challenged representation remains false. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018). Plaintiffs have done neither.

No Plaintiff alleges they intend or wish to buy through Alibaba.com again. And, even assuming they had adequately alleged wrongful conduct on the part of Defendants (they have not), each Plaintiff is now aware of such conduct and therefore is not likely to be harmed in a similar way in the future. Plaintiffs allege only that Defendants "present a threat and likelihood of harm and deception to *members of the Class and the public*"—not themselves. *See* ECF 1 ¶ 237. Because none of the Plaintiffs alleges a likely future injury, none has standing to pursue injunctive relief, and that request should be stricken. *See e.g., Heagney v. John Paul Mitchell Sys.*, 2023 U.S. Dist. LEXIS 134279, at **8-9 (N.D. Cal. Aug. 2, 2023) ("Now that the consumers know what they know, why would they even think about purchasing the same products from Paul Mitchell again? Because they face no risk of future injury, injunctive relief

is unavailable.”).

### H. Plaintiff Hunt’s Claim Under Arizona’s CFA Is Time-Barred

Hunt’s claim under the Arizona Consumer Fraud Act claim should be dismissed because it is time-barred. Arizona imposes a one-year limitations period on actions “upon a liability created by statute,” Ariz. Rev. Stat. § 12-541(5), and the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*, is a statutory claim subject to that one-year period. *See Alaface v. Nat’l Inv. Co.*, 181 Ariz. 586, 591 (Ct. App. 1994); *Murry v. W. Am. Mortg. Co.*, 124 Ariz. 387, 390 (Ct. App. 1979). The pleaded chronology leaves no room to avoid that bar.

Hunt, an Arizona resident, alleges the sauna was delivered on December 20, 2024, and that he learned the same day it “arrived badly damaged and unusable” and was “constructed of particle board covered by a thin veneer” rather than the represented solid Canadian hemlock. ECF 1 ¶¶ 15, 150-51. He further alleges he submitted a claim that day, Alibaba refused relief, he escalated the claim, and Alibaba refused again. *Id.* ¶¶ 152, 159-60. Yet Hunt did not file his action until June 3, 2026, more than seventeen months after Hunt’s own allegations establish discovery of the alleged injury. Plaintiffs’ tolling allegations do not save the claim. *Id.* ¶ 198-201. They are conclusory, conflict with the pleaded facts showing contemporaneous discovery, and should be rejected. *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009). Thus, Count IV should be dismissed.

## IV. CONCLUSION

Plaintiffs’ allegations, if assumed true, are not sufficient to establish they are entitled to the contractual benefits they seek to enforce. Their footnote 30 suggests none of them used the escrow arrangement that Trade Assurance is built on, so the terms of the program never applied to their purchases. If the Rules did apply, they defeat the claims by disclosing the very discretion Plaintiffs say was hidden.

No Plaintiff pleads a consumer purpose the statutes require. The claims sound in fraud but identify no statement, speaker, or date, lumping six affiliated entities together as one. Plaintiffs seek equitable relief while also pursuing an adequate legal remedy. They seek to disgorge money they admit they paid to third-party suppliers, not to Defendants. They demand

an injunction against a platform none of them alleges any wish to use again. And Hunt sues seventeen months into a one-year limitations period.

A complaint that defeats itself in these many places cannot be cured by amendment. Defendants respectfully request that the Court grant the Motion and dismiss the Complaint with prejudice as to the four appearing Defendants.

DATED: August 31, 2026

WOMBLE BOND DICKINSON (US) LLP
TOMIO B. NARITA
GENEVIEVE WALSER-JOLLY
R. TRAVIS CAMPBELL
LEANNE C. YU
MICHELLE CATAPANG
ANDREW YU CHIH

By: Tomio B. Narita
Tomio B. Narita
Attorney for Defendants
*Alibaba Group (US) Inc., Alibaba.com US E-Commerce Corp., Alibaba.com US LLC, and Alibaba Group Holding Limited*